STATE OF CONNECTICUT *v.* RICHARD OSTROSKI

SPEZIALE, C. J., PETERS, HEALEY, ARMENTANO and BIELUCH, Js.

288

Argued October 16, 1981—decision released February 23, 1982

*Joette Katz,* assistant public defender, with whom, on the brief, was *Jerrold H. Barnett,* public defender, for the appellant (defendant).

*Ernest J. Diette, Jr.,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* state's attorney, and *Richard E. Maloney,* assistant state's attorney, for the appellee (state).

SPEZIALE, C. J. During the night of April 11-12, 1977, a nineteen-year-old woman was brutally stabbed to death. The defendant was indicted for her murder and after a trial before the court, consisting of a panel of three judges of the Superior Court, he was found guilty and sentenced to a prison term of

not less than twenty-five years nor more than life. During the trial the court heard evidence and argument on the defendant's motion to suppress "potential testimony or other evidence that was obtained in violation of the constitution or laws of the United States or the State of Connecticut." The trial court denied the motion and orally stated that the defendant was under "apparent custodial interrogation." We remanded the case for further articulation of the threshold issue of custody, so that we could properly review the admissibility of the defendant's incriminating statements and various items of physical evidence. *State* v. *Ostroski,* 184 Conn. 455, 440 A.2d 166 (1981). On remand the trial court found that the defendant was not in custody until his formal arrest following his confession. We disagree.

After the murder the defendant was identified by photograph as one who had been seen in the apartment house of the victim a few days before the killing. The police left messages with his family for him to call. On April 16, 1977, when he learned that Captain McDonnell of the state police wanted to talk with him, the defendant called the state police barracks at Litchfield from a telephone booth in New Milford. Because the defendant was unfamiliar with the area, a New Milford police officer was sent to the defendant's location. In his own car the defendant followed the officer to the New Milford police station. From there the defendant together with his wife and child rode in a state police car to the Litchfield barracks with a state trooper.

Upon arrival at the Litchfield barracks the defendant was informed that he was not under arrest.

McDonnell read aloud from a form listing the *Miranda* rights and the defendant read aloud the portion of the form indicating that he understood those rights and chose not to exercise them. See *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). In the course of the questioning the defendant appeared to discover, and stated, that he had done the act in a drunken, drugged state. He made incriminating statements and authorized an examination of his person and his property. The interrogation, which commenced at 8:15 p.m., was tape-recorded, and the transcription of it is a part of the record in this case. As a result of his confession the defendant was formally arrested at 11:34 p.m.

On appeal the defendant claims error in the admission of his confession and various items of physical evidence.[1] Whether the confession and physical evidence are admissible turns on the answers to two subsidiary questions: (1) whether the defendant was "seized" within the meaning of the fourth amendment to the United States constitution and article first, § 7 of the Connecticut constitution so as to invoke their protection, and, if so, (2) whether he was "reasonably" seized, that is, whether there was probable cause to seize him. *State* v. *Derrico*, 181 Conn. 151, 157–58, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980); *Dunaway* v. *New York*, 442 U.S. 200, 99

---

[1] The defendant also claims that the instructions to the grand jury violate the rule of *Sandstrom* v. *Montana*, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979), because the instruction on intent contained the following language: "Concerning the word intent, I ought to say that ordinarily men are presumed to intend the results which follow their acts." This issue has been resolved adversely to the defendant's claim by this court in *State* v. *Stepney*, 181 Conn. 268, 435 A.2d 701 (1980), and requires no further consideration.

S. Ct. 2248, 60 L. Ed. 2d 824 (1979).[2] Because the state has conceded that there was no probable cause to seize the defendant at the time he was taken to the Litchfield barracks, the only question for this court is whether the defendant was seized at the time he was taken there. We conclude that the defendant was seized at the time he was taken to the Litchfield barracks and that the trial court erred in admitting the confession and physical evidence obtained as a result of the interrogation at the Litchfield barracks on the night in question, which interrogation violated the defendant's fourth amendment protection against unreasonable seizures.

The test of whether a person has been "seized" so as to invoke the protection of the fourth amendment has been set out by the Supreme Court of the United States: "[A] person is 'seized' only when by means of physical force or a show of authority, his freedom of movement is restrained. . . . As long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification. . . . We conclude that a person has been 'seized' within the meaning of the Fourth Amendment only

---

[2] It should be noted that it is also necessary that acquisition of the evidence sought to be suppressed be causally related to the illegal seizure. *State* v. *Derrico,* 181 Conn. 151, 157–58, 434 A.2d 356, cert. denied, 449 U.S. 1064, 101 S. Ct. 789, 66 L. Ed. 2d 607 (1980). Put another way, evidence obtained after an illegal arrest or seizure may be admissible if there is some intervening act sufficient to purge the evidence of the taint of the illegal detention. See *Brown* v. *Illinois,* 422 U.S. 590, 95 S. Ct. 2254, 45 L. Ed. 2d 416 (1975); *Wong Sun* v. *United States,* 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). The state has not argued that there was such an intervening act in this case and nothing in the record before us suggests that there was such an intervening act.

if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States* v. *Mendenhall,* 446 U.S. 544, 553-54, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980).

Whether there has been such a seizure in an individual case is a question of fact. *State* v. *Ostroski,* 184 Conn. 455, 458, 440 A.2d 166 (1981); *State* v. *Derrico,* 181 Conn. 151, 158, 434 A.2d 356 (1980); *State* v. *Love,* 169 Conn. 596, 600, 363 A.2d 1035 (1975). Courts have found seizure: where a defendant "was taken from a neighbor's home to a police car, transported to a police station, and . . . would have been physically restrained if he had refused to accompany the officers"; *Dunaway* v. *New York,* 442 U.S. 200, 212, 99 S. Ct. 2248, 60 L. Ed. 2d 824 (1979); where a defendant "was separated from his two companions and placed in one of the police cruisers with a uniformed officer"; *United States* v. *Blum,* 614 F.2d 537, 540 (6th Cir. 1980); and where "two officers informed [the defendant], following an hour's interrogation, that he was the last person with the murder weapon before the victim's death and that they believed he knew more about the crime than he had revealed." *State* v. *Menne,* 380 So. 2d 14, 17 (La.), cert. denied, 449 U.S. 833, 101 S. Ct. 104, 66 L. Ed. 2d 39 (1980).

We conclude that when the facts of this case are measured by the above standard they constitute a seizure protected by the fourth amendment. The evidence is that when the defendant called, he asked to go in "tomorrow" but the trooper said he "should come in tonight." The defendant was not informed that he could leave at any time. He was told, "you

realize your [sic] at the State Police . . . Barracks okay, it's not a hotel or anything like that." On arrival at the Litchfield barracks, the defendant was separated from his wife and child. He had no car in which to leave because his car had been left in New Milford.

On several occasions the defendant asked to leave. The defendant said to McDonnell, "I'd really like to get going as soon as possible, I'm beat." The police responded not to his request to leave, but to his reason for asking to leave: "Okay, doing a lot of driving . . . ?" and "Did you do all the driving or did the wife do some?" The defendant repeatedly pressed his request to leave. He interrupted his account of his drinking on the day of the murder with, "I'm not sure, see I'm pretty tired, you think I can go, I, I, I'm really, I'd like to terminate this thing cuz ahh any questions I answer, I prob . . . liable to, start fuckin everything up and telling you I was doing one thing, when I was doing another cuz I'm tired and I don't feel good." The police again were unresponsive, addressing only his reason for asking to leave, that he might say something incriminating, and assuring him that what he said was not incriminating: "[T]here's no crime against, ya know, telling me you were drunk." Next, the defendant said, "[c]an I at least get on the road pretty soon?", indicating that he thought his previous requests to go had been rebuffed, that another request to go would also be rebuffed, so he would settle for at least going "pretty soon." That request too was deflected with a response that he didn't need to go for the reason that he would have to drive because they would drive him. In response, the defendant tried yet again: "I want to go back to my car and then from there I'm gonna go, I'll go

home, I'll go home, crimidy sakes, cuz I'm so tired," and asked for an answer, "[s]o, what do you think?" The police, again instead of answering his question, answered a different question: "I think you killed this girl Ricky."

Of course, what counts is not what the defendant believed, but what a reasonable person would have believed in view of all the circumstances. It is plain that a reasonable person would have believed that he was not free to leave in view of these circumstances: where one is summoned now, and "tomorrow" will not do; where one is separated from one's car and taken in a police car to the police barracks; where one is dependent on one's interrogators for the means to leave; where one's interrogators refuse to honor requests to leave; where one's interrogators refuse to honor a request to stop questioning; where the response to a request to see one's spouse is delayed; where the interrogation lasts more than three hours; where one's interrogators ask one's consent to search one's car to take various physical evidence; where one's interrogators say, "I think you killed this girl." We conclude that in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. *United States* v. *Mendenhall,* supra.

Accordingly, the determination of the trial court that the defendant was not in custody is clearly erroneous. See *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980); *Stelco Industries, Inc.* v. *Cohen,* 182 Conn. 561, 564, 438 A.2d 759 (1980); Practice Book § 3060D. It was error for the court to admit the incriminating

statements and the physical evidence because they were the result of an illegal detention, the interrogation at the Litchfield barracks.

There is error, the judgment is set aside and a new trial is ordered.

In this opinion the other judges concurred.