### STATE OF CONNECTICUT *v.* ALAN H. MARTIN
### (2676)

DANNEHY, C.P.J., DUPONT and BORDEN, Js.

Argued May 3—decision released September 18—upon
reconsideration, affirmed November 19, 1984

*Richard D. Arconti,* assistant state's attorney, for
the appellant (state).

*Emanuel Margolis,* with whom were *Judith Rosenberg*
and, on the brief, *Tracy A. Saxe,* for the appellee
(defendant).

BORDEN, J. This is an appeal[1] by the state taken with
the permission of the trial court, pursuant to General
Statutes § 54-96 and Practice Book § 819, from the
judgment of the court dismissing the information with
prejudice, following the granting of the defendant's
motion to suppress. We find no error.[2]

---

[1] This appeal, originally filed in the Supreme Court, was transferred to
this court. Public Acts, Spec. Sess., June, 1983, No. 83-29, § 2 (c).

[2] While this case was on appeal to this court, the United States Supreme
Court held that the exclusionary rule, as effected by a motion to suppress
such as is involved here, "should be modified so as not to bar the use in the
prosecution's case-in-chief of evidence obtained by officers acting in reason-
able reliance on a search warrant issued by a detached and neutral magis-
trate but ultimately found to be unsupported by probable cause." *United
States* v. *Leon,* 468 U.S. , 104 S. Ct. 3405, 82 L. Ed. 2d 677 (1984);
*Massachusetts* v. *Sheppard,* 468 U.S. , 104 S. Ct. 3424, 82 L. Ed. 2d
737 (1984). This case involves not a search pursuant to a search warrant but
a warrantless search, which neither *United States* v. *Leon,* supra, nor *Massa-
chusetts* v. *Sheppard,* supra, addresses. Moreover, the state did not claim

The defendant was charged in an information with illegal possession of a narcotic substance in violation of then General Statutes (Rev. to 1981) § 19-481 (a), now General Statutes § 21a-279 (a), and with illegal possession of a controlled substance in violation of then General Statutes (Rev. to 1981) § 19-481 (c), now General Statutes § 21a-279 (c). He moved to suppress certain substances which the state claimed were cocaine and methaqualone and which had been seized from his car after a warrantless search.

In a comprehensive memorandum of decision, the trial court found the following facts. On August 26, 1981, at approximately 10:30 p.m., Lieutenant Dennis Cooney, the desk officer of the Danbury police department, answered a telephone call and was told by the caller that "there is a blue Corvette out-of-state plate that will be going to the Foundry in about twenty minutes to deal in a large amount of cocaine." The caller, whose voice was unknown to Cooney, did not identify himself. Cooney put out a radio call requesting Detective John Merullo to telephone him.

Merullo had been a member of the Danbury police department for thirteen and one-half years, had worked with the special investigative unit (SIU) of the department involved in narcotics investigations, and had been assigned for the past year to the statewide narcotics task force. Merullo telephoned Cooney from a telephone located at the rear of the headquarters. Cooney told him of the caller's message. Merullo, accompanied by Detective William Hull, used his personal vehicle to

in the trial court a good faith exception to the exclusionary rule for this warrantless search, as it could have. Cf. *United States* v. *Leon,* supra. Thus, there was no occasion for the trial court to make such an initial determination. Nor did the state claim such an exception in this court. Under these circumstances, we decide this case on the basis of what we understand to be the current state of constitutional law, which is that the exclusionary rule applies to warrantless searches.

drive to the Foundry Cafe, which took about five minutes. Upon arriving, Merullo checked the parking lot for a blue Corvette and found none. He parked his vehicle so that he could observe the cafe and the entrance to the parking lot.

Approximately ten minutes later, he saw a blue Corvette with New Hampshire license plates enter the lot and park near two flood lights which were attached to the cafe building and which were about ten feet from a covered walkway. The walkway was the entrance to the cafe and to stores located on the second floor. The area in which the Corvette was parked was well lit. Merullo telephoned the department to check the ownership of the Corvette[3] and to determine if there were any outstanding warrants on it. He also asked Cooney to contact Sargeant James McNamara and Detective Harold Chapman of SIU.

Merullo saw two people leave the Corvette: the operator, a tall white male, later identified as the defendant, and the passenger, a tall white blonde female. They both entered the covered walkway. Merullo assumed they were going to the cafe. Fifteen minutes later the defendant left the walkway accompanied by another male, and they both entered the Corvette. Merullo recognized the other male as Dominic Cristello. At that point there was nothing suspicious about their behavior. The Corvette had tinted windows which prohibited seeing into its interior. A few minutes later, the Corvette was driven to another area where it parked. This was an unlighted area, and Merullo had to move his vehicle in order to keep the Corvette in view. Merullo did not know the operator of the Corvette but he knew, from conversations that he had had with fellow police officers discussing the cafe and drug traffic and from

---

[3] The court did not specifically find that the Corvette was owned by the defendant, but our examination of the transcript indicates that it was undisputed that Merullo's check disclosed that to be the case.

having reviewed Cristello's police file, that Cristello frequented the cafe and had been convicted of a drug charge eight years before.

McNamara and Chapman arrived. Merullo explained everything that had occurred up to the time of their arrival. He told McNamara that he believed that he had probable cause to search the Corvette, and that he intended to do so. It was agreed that McNamara would drive his vehicle to the area where the Corvette was parked. Merullo drove his vehicle and parked directly behind the Corvette; McNamara stopped his vehicle in front of the Corvette so that it was boxed in. Merullo immediately left his vehicle and went to the Corvette to search it. He approached the operator's side, badge in hand, and identified himself as a police officer. He requested that the window be rolled down and it was rolled down partially. He asked the operator, who was the defendant, for his license and registration. Because he could not see into the vehicle due to the tinted glass, for his own protection he opened the door of the Corvette. Upon his doing so, the interior light went on. Merullo stood by the door and saw the defendant trying to find his registration. He also saw the defendant putting a small amber bottle and a small spoon on the floor between his legs. Merullo knew that such a bottle and spoon were commonly used for carrying and snorting cocaine. Merullo told the defendant that he was under arrest. The officers searched the Corvette for five minutes, and found in the back an overnight bag containing a plastic bag of cocaine and a paper bag containing money.

The court specifically found that Merullo's approach to the Corvette was not for purposes of investigation but was for the purpose for searching the vehicle; that the defendant was seized, within the meaning of the fourth and fourteenth amendments to the United States constitution, when the police boxed in the Corvette and

approached it with the intent to search it; and that the request for the defendant's license and registration was pretextual.

The memorandum of decision of the trial court, which was filed on June 1, 1983, analyzed the search and seizure here under the then familiar principles of *Spinelli* v. *United States,* 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969), and *Aguilar* v. *Texas,* 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964). Those principles had been understood to require a reviewing court to gauge the reliability of information given by an informant according to a two-pronged test analyzing (1) the basis of the informant's knowledge—the means by which he acquired his information, and (2) the underlying facts establishing either his general veracity or his reliability in the particular case. See *Illinois* v. *Gates,* 462 U.S. 213, 229–30, 103 S. Ct. 2317, 76 L. Ed. 2d 527, reh. denied, 463 U.S. 1237, 104 S. Ct. 33, 77 L. Ed. 2d 1453 (1983). Beginning with this analysis, which was the proper starting point at that time, the court concluded that the informant's tip was unreliable and "therefore [was] to be treated as if it never existed," and further concluded that the seizure was without probable cause. The court granted the motion to suppress the items seized from the Corvette, namely the amber bottle and its contents, the spoon, the overnight bag and its contents, and the paper bag and its contents.

On June 8, 1983, the United States Supreme Court decided *Illinois* v. *Gates,* supra, in which it abandoned the *Aguilar-Spinelli* test in favor of a determination of probable cause based on the totality of the circumstances.[4] Both parties to this appeal agree, as do we, that the test of *Illinois* v. *Gates,* supra, must be applied to the facts of this case.

[4] Subsequently, the United States Supreme Court made it even more clear that in *Gates* it "did not merely refine or qualify the 'two-pronged test.' We rejected it as hypertechnical and divorced from 'the factual and practical considerations of everyday life on which reasonable and prudent men,

We believe that the trial court went too far in saying that it must completely disregard the anonymous tip. The fact of the tip, the degree to which it contained details and the degree to which those details were corroborated were part of the totality of the circumstances test which a court must use in passing on a claim of probable cause. Id., 230. "While a conscientious assessment of the basis for crediting such tips is required by the Fourth Amendment, a standard that leaves virtually no place for anonymous citizen informants is not." Id., 238. Applying the totality of the circumstances test here, we conclude nonetheless that the trial court was correct in granting the motion to suppress.

The court found that the defendant was "seized," in constitutional parlance, when the officers boxed in the Corvette with their vehicles and approached it with the intent to search. A person is seized when, "in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *State* v. *Ostroski,* 186 Conn. 287, 291–92, 440 A.2d 984, cert. denied, 459 U.S. 878, 103 S. Ct. 173, 74 L. Ed. 2d 142 (1982), quoting *United States* v. *Mendenhall,* 446 U.S. 544, 553–54, 100 S. Ct. 1870, 64 L. Ed. 2d 497, reh. denied, 448 U.S. 908, 100 S. Ct. 3051, 65 L. Ed. 2d 1138 (1980); *Florida* v. *Royer,* 460 U.S. 491, 501–502, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983). "Whether there has been such a seizure in an individual case is a question of fact." *State* v. *Ostroski, supra,* 292. "[S]topping an automobile and detaining its occupants constitute a 'seizure' within the meaning of [the fourth and fourteenth] Amendments, even though the purpose of the stop is limited and the resulting deten-

not legal technicians, act.' . . . Our statement on that score was explicit. '[W]e conclude that it is wiser to abandon the "two-pronged test" established by our decisions in Aguilar and Spinelli. In its place we reaffirm the totality of the circumstances analysis that traditionally has informed probable cause determinations.' " *Massachusetts* v. *Upton,* 466 U.S. 727, 104 S. Ct. 2085, 2087–88, 80 L. Ed. 2d 721 (1984).

tion quite brief." *Delaware* v. *Prouse,* 440 U.S. 648, 653, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979). The court was correct in its factual determination of when the defendant was seized.

It is true that under some circumstances a seizure of an automobile and its occupants may permissibly take place on less than probable cause, such as when there is an investigative stop based on reasonable and articulable suspicion. See, e.g., *Delaware* v. *Prouse,* supra; *State* v. *Januszewski,* 182 Conn. 142, 438 A.2d 679 (1980), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981). It is also true that, ordinarily, the test for determining whether such a seizure should be measured by probable cause or by the less exacting standard of reasonable suspicion is objective, not subjective. See *State* v. *Januszewski,* supra. That is, the court should, in evaluating a search and seizure, look not to the subjective state of mind of the officer performing the search and seizure but to whether "the circumstances, viewed objectively, justify that action." *Scott* v. *United States,* 436 U.S. 128, 138, 98 S. Ct. 1717, 56 L. Ed. 2d 168 (1978); *United States* v. *Robinson,* 414 U.S. 218, 236, 94 S. Ct. 467, 38 L. Ed. 2d 427 (1973); 1 LaFave, Search and Seizure § 3.2 (b).

Here, however, the state did not seek in the trial court to justify this warrantless seizure on the basis that, objectively viewed, it was an investigative stop to be measured by reasonable and articulable suspicion. It did not claim reliance on either the applicability of an objective standard or the existence of facts meeting that standard. Instead, it sought to persuade the court that probable cause existed. Similarly, in this court, both its brief and its oral argument were based on the proposition that the activity of the police constituted a full-scale fourth amendment seizure requir-

ing probable cause. It was not until our original decision was released that the state, by a motion for reargument, for the first time, raised the claim that we review the seizure by the standard of reasonable and articulable suspicion.[5]

For several reasons, we decline to disturb our original decision and to reanalyze the case on the basis of the state's belated claim. First, the state did not follow the mandate of Practice Book § 285A to state this claim of law distinctly to the trial court. Thus, the trial court was not alerted to the opportunity to make additional factual findings which might have been relevant to the claim, and we were thus deprived of those findings and of a reasoned analysis of them by the trial court. See *Barrett* v. *Central Vermont Railway, Inc.*, 2 Conn. App. 530, 537, 480 A.2d 589 (1984). Second, the state did not follow the mandate of Practice Book § 3012, that this issue on appeal be indicated in its preliminary statement of issues, or of Practice Book § 3060F, that its brief concisely set forth this issue. See *Zoning Board of Appeals* v. *Bemis*, 2 Conn. App. 278, 477 A.2d 170 (1984). Third, whether there was, in any given set of circumstances, a reasonable and articulable suspicion is in the first instance a question of fact for the trial court; see *State* v. *Ostroski*, 186 Conn. 287, 292, 440 A.2d 984, cert. denied, 459 U.S. 878, 103 S. Ct. 173, 74 L. Ed. 2d 142 (1982); subject ordinarily to a limited scope of appellate review. *State* v. *Zindros*, 189 Conn. 228, 456 A.2d 288 (1983), cert. denied, 465 U.S. 1012, 104 S. Ct. 1014, 79 L. Ed. 2d 244 (1984).

---

[5] We granted the motion for reargument in part and ordered that supplemental briefs be filed. On November 19, 1984, without the necessity of further oral argument, we decided the motion, affirming our initial finding of no error and indicating that we would at a later date issue this revised opinion effective November 19, 1984. See *Wrinn* v. *Dunleavy*, 186 Conn. 125, 126, 440 A.2d 261 (1982).

Thus, it is particularly inappropriate for us to make such a determination after full briefing and argument which ignored that issue.

The rule that claims on appeal should first be made at trial " 'applies to criminal as well as civil cases.' " *State* v. *Johnson,* 166 Conn. 439, 445, 352 A.2d 294 (1974). That rule applies to the state as well as to the defendant. We therefore decide this case on the theory on which it was tried and decided in the trial court, and briefed and argued in this court. *Beckenstein* v. *Potter & Carrier, Inc.,* 191 Conn. 120, 132, 464 A.2d 6 (1983). That theory is that the seizure must have been based on probable cause in order to be valid.

Although *Illinois* v. *Gates,* supra, involved a search and seizure pursuant to a warrant, as did *Aguilar* and *Spinelli,* the same standards of probable cause apply to a warrantless search and seizure. See, e.g., *United States* v. *Smith,* 598 F.2d 936, 937 n.2 (5th Cir. 1979).[6] Probable cause deals " 'with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' " *Illinois* v. *Gates,* supra, 231. "Probable cause means more than mere suspicion. There must be facts and circumstances within the officer's knowledge, and of which he has trustworthy information, sufficient to justify the belief of a reasonable person that an offense has been or is being committed. . . . There is often a fine line between mere suspicion and probable cause, and '[t]hat

---

[6] Of course, where the search and seizure are pursuant to a warrant, a more "deferential standard of review is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant." *Massachusetts* v. *Upton,* 466 U.S. 727, 104 S. Ct. 2085, 2088, 80 L. Ed. 2d 721 (1984); see also *State* v. *Zindros,* 189 Conn. 228, 253–54, 456 A.2d 288 (1983), cert. denied, 465 U.S. 1012, 104 S. Ct. 1014, 79 L. Ed. 2d 244 (1984).

line necessarily must be drawn by an act of judgment formed in the light of the particular situation and with account taken of all the circumstances.' " *State* v. *Penland,* 174 Conn. 153, 155–56, 384 A.2d 356, cert. denied, 436 U.S. 906, 98 S. Ct. 2237, 56 L. Ed. 2d 404 (1978). In the context of a search, there must be probable cause to believe that the material to be seized is connected with criminal activity or will assist in a particular apprehension or conviction, and that the material will be found in the place to be searched. *State* v. *DeChamplain,* 179 Conn. 522, 528–29, 427 A.2d 1338 (1980). Of particular significance here is the reminder of the United States Supreme Court: " 'The process [of determining probable cause] does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *Illinois* v. *Gates,* supra, 231–32, quoting *United States* v. *Cortez,* 449 U.S. 411, 418, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981).

Applying this test to the seizure which occurred here, we conclude that it was based on less than probable cause. While the informant's tip was a permissible starting point, it lacks sufficient detail and it was not followed by sufficient corroborative behavior to raise the totality of the circumstances from the level of suspicion to the level of probable cause. Cf. *Illinois* v. *Gates,* supra.

The state seeks to support this search by pointing to certain circumstances concerning which Merullo testified, but which the court did not find as facts. This evidence is that Cristello was known as a narcotics user

and dealer; that the police were aware of ongoing drug activity at the cafe; that drug transactions commonly take place in the area of bars and nightclubs; that the dark tinted windows of the Corvette are the type often used in drug transactions; and that the area to which the Corvette was moved was secluded. We need not decide whether this evidence, if credited by the trial court, taken together with the other facts which the court did find, would have supplied a sufficient underpinning for this search. Suffice it to say that the court issued a factually detailed memorandum of decision which did not refer to this evidence. When the court rules on a motion to suppress without detailing the facts supporting its decision, an appellate court may look to the evidence produced in support of the ruling. See, e.g., *State* v. *Jones,* 193 Conn. 70, 475 A.2d 1087 (1984). But where, as here, the trial court performs its judicial function conscientiously by detailing the facts which the state has established, we are not free to add facts which are not found and which are not undisputed. See *State* v. *Perez,* 181 Conn. 299, 302–303, 435 A.2d 334 (1980). We thus address this search shorn of those "facts" which the state seeks to add.

The state concedes in its brief that the arrival of the Corvette at the predicted time and place was insufficient to establish probable cause. It argues, however, that what took place thereafter supplied sufficient corroboration of the tip to establish probable cause under *Illinois* v. *Gates,* supra. We disagree.

We note that although *Gates* abandoned the rigid *Aguilar-Spinelli* test to be applied to informer's tips, it specifically retained the process of examining, in the context of the totality of the circumstances, the "informant's 'veracity,' 'reliability' and 'basis of knowledge' [as] all highly relevant in determining the value of his report." Id., 230. We note also that *Gates* focused its analysis on three basic types of informer's tips: those

from a particular informant known for the reliability of his predictions of certain types of criminality in a certain area; those from an unquestionably honest citizen who comes forward with a report of criminal activity, which, if fabricated, would subject him to criminal liability; and those from an informant who, although his motives may be open to question, supplies an explicit and detailed description of alleged wrongdoing, along with an indication that the event was observed firsthand, thus entitling the tip to greater weight than might otherwise be the case. Id., 233–34.

It is this third type which provides the starting point of our analysis in this case; for, under *Gates,* where the tip involves a prediction of future activity, it is not necessary that the tipster himself indicate a basis of first-hand knowledge, as long as the detail of the tip indicates a "fair probability" that the information came from the target of the tip or from someone whom the target trusted, and as long as that probability was provided by corroboration of the "major portions" of the tipster's predictions. Id., 246.

Here, the amount of the detail in the tip, which Merullo's investigation corroborated, was moderate, to say the most. It amounted to the color and make of an automobile with out-of-state plates, and the estimated time and place of its arrival. Compare, e.g., the amount of detail supplied by the anonymous letter-writer in *Illinois* v. *Gates,* supra; and the amount of detail supplied by the known informant in *Draper* v. *United States,* 358 U.S. 307, 79 S. Ct. 329, 3 L. Ed. 2d 327 (1959), described by the court in *Gates* as "the classic case on the value of corroborative efforts of police officials." Id., 242. What followed the defendant's arrival at the cafe at the generally predicted time and in a vehicle which fit the general description given in the tip was that the defendant left the vehicle with one person, returned with another who had an eight year old

drug conviction, and moved the vehicle from an illuminated area to an unilluminated area. While this activity may well have given Merullo reasonable and articulable suspicion that the predicted drug sale was taking place, and while this is a close case, we cannot say that the amount of the detail originally supplied was enough, and that it was sufficiently corroborated by further detail, so as to establish a fair probability that the anonymous tipster here had obtained his information either from the defendant or from someone whom the defendant trusted. Cf. *Illinois* v. *Gates,* supra; *Massachusetts* v. *Upton,* supra. We are mindful that "[b]ecause an informant is right about some things, he is more probably right about other facts . . . ." *Illinois* v. *Gates,* supra, 244, quoting *United States* v. *Spinelli,* supra, 427. Unlike *Gates,* however, in which the anonymous letter "contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted"; *Illinois* v. *Gates,* supra, 245; the nature of the tip and its corroboration here were insufficient to afford " 'a substantial basis for crediting the' " tip. Id. Thus, we conclude that the search was based on less than probable cause.

There is no error.

In this opinion the other judges concurred.