## STATE OF CONNECTICUT *v.* PHILLIP ANDERSON
## (9088)

DUPONT, C. J., SPALLONE and LAVERY, Js.

Argued November 7, 1990—decision released April 16, 1991

*Brian M. O'Connell,* for the appellant (defendant).

*Judith Rossi,* assistant state's attorney, with whom, on the brief, were *John Bailey,* state's attorney, and *Edward Wilson,* deputy assistant state's attorney, for the appellee (state).

LAVERY, J. The defendant appeals from a judgment of conviction on a charge of driving while his license was under suspension in violation of General Statutes § 14-215.[1] The conviction was based on a conditional

---

[1] General Statutes § 14-215 provides in relevant part: "OPERATION WHILE REGISTRATION OR LICENSE IS REFUSED, SUSPENDED OR REVOKED. (a) No

plea of nolo contendere in accordance with General Statutes § 54-94a.[2] The sole issue on appeal is whether an anonymous telephone tip corroborated by independent police work, under all the circumstances of this case, had sufficient indicia of reliability to provide a reasonable and articulable suspicion to warrant an investigatory stop of the defendant.[3] We affirm the judgment of the trial court.

The following facts are pertinent to the resolution of this appeal. On September 27, 1989, at 3 p.m., Commander David C. Foran, Jr., of the Glastonbury police department received an anonymous telephone call. The caller indicated that a brown Mack garbage truck, occupied by a driver and a passenger and owned by the C & R Sanitation Company, was being operated in the Wells Village area of Glastonbury. The caller informed

person to whom an operator's license has been refused, or whose operator's license or right to operate a motor vehicle in this state has been suspended or revoked, shall operate any motor vehicle during the period of such refusal, suspension or revocation. No person shall operate or cause to be operated any motor vehicle, the registration of which has been refused, suspended or revoked, or any motor vehicle, the right to operate which has been suspended or revoked."

[2] General Statutes § 54-94a provides in relevant part: "CONDITIONAL NOLO CONTENDERE PLEA. APPEAL OF DENIAL OF MOTION TO SUPPRESS OR DISMISS. When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure, motion to suppress statements and evidence based on the involuntariness of a statement or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

[3] In his brief, the defendant seeks our review of the warrantless arrest in the absence of probable cause. The arrest was made after the officer had verified that the defendant's license was under suspension. When the arrest was made, the police officer had established probable cause sufficient to arrest the defendant.

Foran that the truck was being driven by an individual whose operator's license was under suspension. Foran dispatched Officer Keith O'Brien to the area and relayed the specific information contained in the anonymous tip to the officer.

O'Brien drove to the area indicated by the tipster and observed a brown Mack garbage truck with C & R Sanitation markings proceeding along Harris Street in the Wells Village area. The truck was occupied by a driver and one passenger. Using the strobe lights on his cruiser, O'Brien signaled the driver to pull over. As O'Brien exited his cruiser, the defendant exited his vehicle on his own initiative, meeting O'Brien at the rear of the truck. O'Brien requested the defendant's driver's license and vehicle registration. The defendant produced the vehicle registration but indicated that he was unable to produce his driver's license.

O'Brien asked the defendant if his driver's license was suspended, and the defendant admitted that it was. O'Brien then confirmed with the motor vehicle department that the defendant's driving privileges were suspended. O'Brien issued a motor vehicle summons to the defendant, charging him with operating a motor vehicle while his right to drive was suspended, and released him. The defendant entered a plea of not guilty and filed a motion to suppress all evidence obtained after the allegedly unconstitutional stop of the vehicle he was driving. After a hearing, the motion to suppress was denied and the defendant entered a subsequent plea of nolo contendere, reserving the right to appeal the denial of the suppression motion.

The defendant claims that the trial court was incorrect in its denial of his motion to suppress because the stop of the garbage truck was not based on a reasonable and articulable suspicion. The defendant asserts that the anonymous telephone tip, which triggered the

stop, did not have the constitutionally required indicia of reliability and was not corroborated by independent police work prior to the stop.

The stop of a motor vehicle and detention of its occupant constitutes a seizure within the meaning of the fourth and fourteenth amendments to the United States constitution. *State* v. *Martin,* 2 Conn. App. 605, 611, 482 A.2d 70 (1984), cert. denied, 195 Conn. 802, 488 A.2d 457, cert. denied, 472 U.S. 1009, 105 S. Ct. 2706, 86 L. Ed. 2d 721 (1985). This is true even if the stop is limited and the resulting detention is quite brief. *Delaware* v. *Prouse,* 440 U.S. 648, 653, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979). Such brief investigatory seizures and detentions are permitted under both the United States and the Connecticut constitutions, even in the absence of probable cause, provided the police have a reasonable and articulable suspicion that the occupants of the vehicle have engaged, are engaged, or are about to engage in criminal activity. *Michigan* v. *Long,* 463 U.S. 1032, 1049–52, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983); *State* v. *Lamme,* 216 Conn. 172, 184, 579 A.2d 484 (1990); *State* v. *Carter,* 189 Conn. 611, 617, 458 A.2d 369 (1983). The purpose of such a detention is to maintain the status quo while investigating the circumstances that give rise to the suspicion of criminal wrongdoing. See *Adams* v. *Williams,* 407 U.S. 143, 146, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972); *State* v. *Carter,* supra, 618. The United States Supreme Court has held that in situations where police have a reasonable and articulable suspicion that a motorist is unlicensed or that an automobile is not registered, stopping a motor vehicle and detaining the operator in order to check his driver's license and registration is not unreasonable under the fourth amendment. *Delaware* v. *Prouse,* supra, 663.

What constitutes a reasonable and articulable suspicion depends on the totality of the circumstances.

*State* v. *Aillon,* 202 Conn. 385, 399, 524 A.2d 555 (1987); *State* v. *Aversa,* 197 Conn. 685, 690, 501 A.2d 370 (1985). The determination of whether a specific set of circumstances provides a police officer with a reasonable and articulable suspicion of criminal activiity is a question of fact for the trial court and is subject to limited appellate review. *State* v. *Martin,* supra, 612A. Thus, an appeal challenging the factual basis of the trial court's decision requires only that we determine, in light of the record taken as a whole, whether the court's decision is supported by the evidence, or is clearly erroneous. *State* v. *Zindros,* 189 Conn. 228, 238, 456 A.2d 288 (1983), cert. denied, 456 U.S. 1012, 104 S. Ct. 1014, 79 L. Ed. 2d 244 (1984); *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980).

In reviewing the police officer's actions in this case, we must determine, first, whether the stop was justified at its inception and whether the ensuing police response was "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry* v. *Ohio,* 392 U.S. 1, 19–20, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). This analysis requires our examination of the facts available to the police officer and any rational inferences derived therefrom. *State* v. *Aillon,* supra.

The trial court found that the stop was initiated by an anonymous tip. The facts contained in that tip were specific with regard to time, location of the truck, and the alleged offense. The tip also provided a detailed description of the truck, including its markings, make and number of occupants.

The trial court also found that, when the officer arrived in the area indicated by the tip, he made independent observations confirming that every detail of the tip was accurate and the information was current.

The officer's ability to make an empirical confirmation that the details of the anonymous tip were accurate provided a reasonable basis for the suspicion that the truck was being driven by an operator without a license. This reasonable suspicion was sufficient to allow the officer to proceed with a minimally intrusive stop to determine if the operator's driving privileges had been suspended. The brief and limited stop provided the least intrusive means of determining whether the scope of the investigation should be expanded.

The investigative stop was based on information that provided a substantial basis for a suspicion and not an inarticulable hunch. The officer's actions pass constitutional muster because the stop does not represent the kind of spot check executed at the unbridled whim of law enforcement officials that violates fourth amendment protection. *Delaware* v. *Prouse,* supra, 661.

When law enforcement officials corroborate the details of an anonymous informant's tip, the tip can give rise to a reasonable articulable suspicion. *Alabama* v. *White,* 496 U.S. 325, 330–31, 110 S. Ct. 2413, 110 L. Ed. 2d 301 (1990); *United States* v. *Alvarez,* 899 F.2d 833, 837 (9th Cir. 1990); *United States* v. *Rodriguez,* 835 F.2d 1090, 1092 (5th Cir. 1988).

In *United States* v. *McClinnhan,* 660 F.2d 500, 502 (D.C. Cir. 1981), the D.C. Circuit Court held that an anonymous tip can provide sufficient reasonable suspicion when the tip was corroborated in every significant detail by prestop surveillance. The *McClinnhan* court noted that it is possible for anyone with a grudge to fabricate a tip, the neutral details of which lack the facial indicia of reliability. Nevertheless, when an officer's suspicions are corroborated by prestop surveillance confirming those details, an investigative detention of the suspect is justified. Id., 502–503.

In *Alvarez,* an anonymous tip provided police officers with a description of a man in a motor vehicle parked behind a bank. The anonymous informant told police that the man intended to rob the bank. After several minutes of police surveillance the vehicle departed the bank when one of the police cruisers passed within the line of sight of the driver. The police pulled the vehicle over and conducted a frisk of the defendant which yielded a handgun. *United States* v. *Alvarez,* supra, 835.

*Alvarez* argued that the activities observed by the police were innocent and not probative of criminal activity. Id., 838. The *Alvarez* court held that although the activity when taken alone might seem innocent, when viewed in light of the tip and other circumstances such activity appears highly suspicious and may provide the basis for a reasonable suspicion. Id. The court concluded that the fact that the officers themselves did not actually observe criminal activity was irrelevant under the circumstances because the officers had a particularized and objective basis for making the investigatory stop of Alvarez' vehicle. Id.

In the recent Supreme Court case of *Alabama* v. *White,* supra, the police received an anonymous telephone tip indicating that White would be leaving a particular apartment at a particular time in a particular vehicle, that she would be going to a particular motel and that she would be in possession of cocaine. They immediately proceeded to the apartment building where they saw a vehicle matching the caller's description. The officers observed White leaving the building and entering the vehicle. They followed her along the most direct route to the motel, and stopped her vehicle just short of the motel. A consensual search of the vehicle revealed marihuana and, after White was arrested, cocaine was found in her purse.

The *White* court held that the anonymous tip, as corroborated by independent police work, exhibited sufficient indicia of reliability to provide a reasonable suspicion to make the investigatory stop. Although the police did not verify every detail of the tip, the fact that the tip predicted White's future behavior was corroborative enough to allow the police to believe that the caller was reliable and informed.

In considering the anonymous tip before us on its merits, we must determine if the tip bears sufficient indicia of reliability to support the stop by the police. It is clear that the tip provided a very specific description of the make, markings, and color of the garbage truck. It located the truck in Wells Village and indicated that there were two occupants in the cab. All the details of the tip were corroborated.

In *United States* v. *Hensley,* 469 U.S. 221, 105 S. Ct. 675, 83 L. Ed. 2d 604 (1985), the United States Supreme Court held that the determination of whether an investigatory stop is constitutional requires the balancing of the nature of the intrusion upon personal security against the importance of the governmental interest inducing that intrusion. Our Supreme Court has applied this standard in Connecticut in *State* v. *Mitchell,* 204 Conn. 187, 196, 527 A.2d 1168, cert. denied, 484 U.S. 927, 108 S. Ct. 293, 98 L. Ed. 2d 252 (1987).

The state has a compelling interest in ensuring that only qualified drivers operate vehicles on public roads. *Delaware* v. *Prouse,* supra, 658. The only immediate way to determine the identity of the driver and whether he possessed a valid license was to stop the truck. "The reasonableness of the officer's decision to stop a suspect does not turn on the availability of less intrusive investigatory techniques." *United States* v. *Sokolow,*

490 U.S. 1, 11, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989). The degree of intrusion was minimal and the defendant got out of the cab on his own initiative. He was not searched or taken into custody. The officer having a reasonable and articulable suspicion acted within the scope of his authority under General Statutes § 14-217[4] to determine the defendant's identity and operator status. In balancing the state's compelling interest against the minimal intrusion we conclude that no fourth amendment violation has occurred.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[4] General Statutes § 14-217 provides in relevant part: "OPERATOR TO GIVE NAME AND SHOW OR SURRENDER LICENSE, REGISTRATION AND NO-FAULT INSURANCE IDENTIFICATION CARD. No person who is operating or in charge of any motor vehicle, when requested by any officer in uniform, by an agent authorized by the commissioner who presents appropriate credentials . . . or refuse, on demand of such officer, agent . . . to produce his motor vehicle registration certificate, operator's license and any no-fault automobile insurance identification card for the vehicle issued pursuant to section 38a-364 or to permit such officer, agent or such other person to take the operator's license, registration certificate and any such no-fault insurance identification card in hand for the purpose of examination, or refuse, on demand of such officer, agent or such other person, to sign his name in the presence of such officer, agent or such other person."