## STATE OF CONNECTICUT *v.* ANDRE COARDES
## (AC 16491)

Landau, Spear and Freedman, Js.

Argued September 23—officially released November 24, 1998

*Lisa J. Steele*, special public defender, for the appellant (defendant).

*Denise B. Smoker*, assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Maxine Wilensky*, assistant state's attorney, for the appellee (state).

*Opinion*

PER CURIAM. The defendant appeals from the judgment of conviction, rendered after a jury trial, of possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b) and possession of a controlled substance in violation of General Statutes § 21a-279 (c). The sole issue before us is whether, in denying the defendant's motion to suppress, the trial court properly concluded that the police officers had sufficient information to justify a *Terry*[1] stop of the defendant's vehicle. We conclude that the sum total of the information known to the police was sufficient for a *Terry* stop and, therefore, the trial court properly denied the defendant's motion to suppress.

In an oral decision, the trial court found the following facts. On September 10, 1995, Officers Russell Sea and Eric Jones of the New Haven police department were

---

[1] In *Terry* v. *Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), the United States Supreme Court set out the standard for police investigatory stops of individuals based on a reasonable and articulable suspicion of criminal activity.

dispatched to the area of Wayfarer Street after a report of gunshots. They left after finding no persons in the area and no shell casings or broken glass.

Within minutes of leaving the Wayfarer Street area, Sea and Jones received a radio dispatch that a shooting victim had walked into the emergency room of Yale-New Haven Hospital. In a subsequent radio dispatch, the officers were advised that the victim had been shot on Wayfarer Street. Sea and Jones thereafter returned to the Wayfarer Street area.

Officer Robert Lawlor, who was assigned to the Wayfarer Street area, had not responded to the initial dispatch regarding the gunshots because he was investigating a domestic dispute. After concluding that investigation, Lawlor went to the Wayfarer Street area. When he reached the area, a black male, approximately six feet, two inches tall, wearing baggy jeans and a multicolored shirt, approached him. The black male did not want to get involved, but he pointed out the defendant's vehicle, which was at the intersection of Wayfarer and Level Streets, and indicated that the vehicle was present at the shooting.

After Lawlor left the scene to follow the defendant's vehicle, Sea and Jones returned to Wayfarer Street. They were approached by the same black male who had approached Lawlor. The black male wanted to know why they had not stopped the car that he had pointed out because it was "weighted down," a street term for a vehicle that contains illegal drugs or firearms. The black male also advised the officers that the occupants of the car were responsible for the shooting.

Sea and Jones radioed Lawlor, who was following the defendant's vehicle, and told him that they had information that the vehicle had been involved in the shooting on Wayfarer Street. Lawlor subsequently stopped the defendant's vehicle. As the defendant

exited the vehicle, he admitted that he possessed marijuana on his person and that there was cocaine in the vehicle. Prior to trial, the defendant moved to suppress the statement and the contraband found in his vehicle, arguing that the initial stop of the defendant's vehicle was not justified. The trial court denied the defendant's motion.

Our Supreme Court has stated that "[o]n appeal, we apply a familiar standard of review to a trial court's findings and conclusions in connection with a motion to suppress. A finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . The conclusions drawn by the trial court will be upheld unless they are legally and logically inconsistent with the evidence. . . . Because a trial court's determination of the validity of a patdown search implicates a defendant's constitutional rights, however, we engage in a careful examination of the record to ensure that the court's decision was supported by substantial evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Trine*, 236 Conn. 216, 225, 673 A.2d 1098 (1996); see *State* v. *Colvin*, 241 Conn. 650, 656, 697 A.2d 1122 (1997); *State* v. *Petruzzelli*, 45 Conn. App. 804, 806–807, 699 A.2d 204 (1997).

The defendant's principal claim is that because the information was received from an anonymous informant and was not corroborated, it could not support a finding that the officers had the reasonable and articulable suspicion necessary to justify a stop of the defendant's vehicle. We disagree.

"A police officer does not need to have probable cause to believe that a crime has been committed in order to make a lawful stop of a motor vehicle. An investigatory stop is authorized if the police officer had a reasonable and articulable suspicion that a person has committed or is about to commit a crime. *State* v.

*Lamme,* 216 Conn. 172, 184, 579 A.2d 484 (1990). Whether a reasonable and articulable suspicion exists depends on the totality of the circumstances. *State* v. *Anderson,* 24 Conn. App. 438, 441, 589 A.2d 372, cert. denied, 219 Conn. 903, 593 A.2d 130 (1991)." *Price-Crowley* v. *Kozlowski,* 49 Conn. App. 481, 484–85, 714 A.2d 719, cert. denied, 247 Conn. 919, 722 A.2d 811 (1998).

The police possessed information that corroborated the information received from the anonymous informant. Police officers were initially dispatched to the Wayfarer Street area because of a report of gunshots. Prior to stopping the defendant, the police also knew that a victim of a shooting on Wayfarer Street had walked into the Yale-New Haven Hospital emergency room. The defendant asserts that before following the defendant's car, the police should have obtained more details from the informant to ascertain the basis of his claimed knowledge. The testimony of the officers makes it clear that the informant gave his information quickly and walked away because he was obviously unwilling to become more involved with the police. The trial court stated that "[i]n the course of their investigation, the officers did not find this [reluctance to get involved] unusual, particularly in this area, which they identified as a high crime area, where there are a lot of gunshots and gunplay, and where many people do not want to be associated with the police." The officers were faced with a choice of going after the informant and attempting to obtain more information or going after the vehicle and making an investigatory stop. The collective knowledge of the officers was sufficient to raise a reasonable and articulable suspicion of criminal activity that justified their decision to pursue and stop the defendant's car.

The defendant's other attacks on the court's findings essentially are that (1) the court should not have

believed the police officers because important information did not appear in the police reports and (2) the trial court's conclusion that the anonymous informant had personal knowledge about the alleged shooting is unsupported by the evidence. It is axiomatic that the trier of fact is the judge of credibility, and we do not substitute our judgment for that of the trial court in credibility matters. *State* v. *Jones*, 50 Conn. App. 338, 363, 718 A.2d 470 (1998). After a review of the record and briefs, we cannot say that the trial court's findings were clearly erroneous, that the trial court's conclusions were legally and logically inconsistent with the evidence or that the court's decision was not supported by substantial evidence.

The judgment is affirmed.