[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO SUPPRESS
The Defendant has filed a motion to suppress evidence that was seized and/or discovered as a result of the stop of his motor vehicle by an officer of the Waterford Police Department on October 8, 2000.
The motion asserts that the police officer did not have reasonable CT Page 2237 and articulable suspicion that a crime had been committed prior to stopping the defendant. Accordingly, the defendant claims that his seizure by the police violated the Fourth Amendment to the United States Constitution,[1] and Article First, Sections 7, 8 and 9
of the Connecticut Constitution.[2]
 FACTUAL FINDINGS
The parties have stipulated to the following facts, which are set forth in State's Exhibit 1: On October 8, 2000 at approximately 12:15 a.m., an unidentified caller contacted the Waterford Emergency Communications Center by cellular telephone. The caller related that a small blue station wagon with a temporary Connecticut registration plate was traveling in a southerly direction on Clark Lane in Waterford. The number on the temporary plate was not given. The anonymous caller indicated that the vehicle was "weaving badly" upon the roadway. No other information about the automobile, or its operator, was provided.
Officer Teel of the Waterford Police Department was in the vicinity and located a vehicle fitting that description as it was turning from Route 1 onto Route 156. The police report further indicates:
 "Officer Teel immediately activated his marked police cruiser's emergency lights to enact a motor vehicle stop, but the vehicle did not yield [and] instead continued to travel west on Rte. 156. After several hundred feet and with the vehicle still not yielding, Officer Teel engaged his cruiser's siren and the vehicle did then pull to the right side of the road." (State's Exhibit 1).
The automobile, which was being operated by the defendant, was a blue, 1988 Ford Escort station wagon bearing Connecticut temporary registration plate 627B9. (State's Exhibit 1).
Based on the facts to which the parties have stipulated, the court finds that Officer Teel never observed the defendant operate erratically, or engage in any violation of the law, prior to the moment when he signaled the defendant to stop.
The court finds that the defendant was seized when the police officer activated the cruiser's emergency lights, because it was at this point that the defendant's freedom of movement was limited by a display of official authority. (See State v. Hill, 237 Conn. 81, 87 (1996) and Statev. Donahue, 251 Conn. 636, 643, 742 A.2d 775 (1999). CT Page 2238
As a result of the defendant's detention and search, evidence was discovered and/or seized which resulted in the defendant's arrest for the pending charges.
 DISCUSSION
Connecticut case law is clear that the brief investigatory detention of a motor vehicle and its occupants is constitutionally permissible if the police have a reasonable and articulable suspicion that a crime has been, or is about to be, committed. State v. Anderson, 24 Conn. App. 438, 441,589 A.2d 372 (1991); State v. Hill, 237 Conn. 81, 87, 675 A.2d 886 (1996) and State v. Donahue, supra, 643.
"In determining whether the detention was justified in a given case, a court must consider if based upon the whole picture the detaining officers [had] a particularized and objective basis for suspecting the particular person stopped of criminal activity." (Internal quotation marks and internal citations omitted), State v. Donahue, supra, page 644. There must be ". . . some objective manifestation that a person is, or is about to be, engaged in criminal activity." (Internal quotation marks and internal citations omitted). State v. Scully, 195 Conn. 668, 674 (1985).
In the present case, the Waterford police officer did not witness erratic operation, motor vehicle violations or any illegal conduct before he attempted to stop the defendant's automobile. The officer's decision to detain the defendant was apparently based solely on the radio broadcast containing the information provided by the anonymous caller.[3]
Court must analyze the "totality of the circumstances" in determining whether or not an anonymous informer's tip created the level of reasonable suspicion that justified a warrantless search or seizure by the police. The existence of reasonable and articulable suspicion ". . . is dependent upon both the content of the information possessed and its degree of reliability." Alabama v. White, 496 U.S. 325, 330,110 S.Ct. 2412, 110 L.Ed. 301
(1990). "An anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity inasmuch as ordinary citizens generally do not provide extensive recitations of the basis of their everyday observations and given that the veracity of persons supplying anonymous tips is by hypothesis largely unknown and unknowable . . . It provides virtually nothing from which one might conclude that the caller is either honest or his information is reliable . . ." (Internal quotation marks omitted.) Alabama v. White, supra, page 329, quotingIllinois v. Gates, 462 U.S. 213, 237, 227, 103 S.Ct. 2317,76 L.Ed. 527 (1983). CT Page 2239
In Florida v. J.L., 529 U.S. 266, 120 S.Ct. 266, 146 L.Ed.2d 254, (1998), the United States Supreme Court found that a search based solely on an anonymous telephone caller's claim that an individual was carrying a gun at a bus stop was unconstitutional. The Supreme Court held that the informant's tip lacked sufficient indicia of reliability to give the police reasonable suspicion for an investigatory stop and frisk of the suspect. The court noted that: "The reasonable suspicion here at issue requires that a tip be reliable in its assertion of illegality, not just in its tendency to identify a determinate person." Florida v. J.L., supra, page 272.
In accordance with the precedent of the White and J.L. cases, the court must decide here whether or not the anonymous tip was sufficiently reliable in its assertion that the defendant might be operating a motor vehicle under the influence of intoxicating liquor or drugs. Based on all of the evidence presented, the court concludes that it was not. The identity and location of the caller were not known to the police. Absent independent corroboration, the police had no way of verifying the informant's honesty and reliability. The dispatch center received only one telephone call about the allegedly intoxicated motorist. Although the informant stated a direction of travel and described an automobile similar in model, color and license plate type to the defendant's, he or she did not provide a plate number, or physical description of the operator. (State's Exhibit 1.) Aside from the observation that the motor vehicle "was weaving badly upon the roadway" (State's Exhibit 1), the caller did not report any other potentially illegal conduct. The anonymous tip was devoid of any historical or predictive information about the suspect that might have aided the police to test the informant's knowledge or credibility. Finally, the responding officer did not make any independent observation of the defendant's operation before initiating the motor vehicle stop.
Based on the totality of the circumstances in this case, the court finds that the, informant's tip lacked the indicia of reliability sufficient to create a reasonable and articulable suspicion that the defendant was committing, or about to commit, a crime. Therefore, the court finds that the seizure of the defendant's person was in violation of his rights under our state and federal constitutions.
In urging the court reach a contrary decision, the prosecution has cited the case of State v. Ball, MV 99639533, Superior Court, Judicial District of New London at New London, which was decided by this court on March 13, 2000. There, the court denied a motion to suppress in the case of an allegedly intoxicated motorist arrested by the state police. The CT Page 2240 arresting trooper had not observed erratic operation.
In Ball, the desk trooper at the state police barracks received between 10 and 20 "911" telephone calls over a short period of time which described a specific automobile that was allegedly being operated recklessly on Route 95. The callers described the model and color of the vehicle in question, its marker plate number, a description of the operator and passenger, and the direction in which the vehicle was traveling. Although the responding trooper did not see the defendant operating recklessly or erratically, he testified that when he located the suspect vehicle on the highway, other motorists were pointing at it. Based on the totality of the circumstances in that case, the court found that the volume of the emergency telephone calls, the similarity and quality of the information imparted, the subsequent verification of some of that information by the responding trooper, and the gesturing by the motorists who were in the vicinity of the vehicle, all combined to create reasonable suspicion which justified the investigatory stop. The court finds the fact pattern in Ball is distinguishable from the one in this case. Unlike the numerous telephone reports in the prior case, the single, anonymous telephone call in this matter lacked the quantum of reliability upon which reasonable suspicion could be based.
Because the initial stop of the defendant was constitutionally defective, the court grants the defendant's motion to suppress all evidenced seized or discovered as a result of his detention and arrest on October 8, 2000.
SO ORDERED:
BY THE COURT:
Dyer, J.