## STATE OF CONNECTICUT *v.* PAUL G. ROYCE
## (10959)

DUPONT, C. J., HEIMAN and FREEDMAN, Js.

Argued September 29—decision released November 17, 1992

*Julia DiCocco Dewey,* assistant state's attorney, with whom, on the brief, were *John Redway,* state's attorney, and *Russell Zetner,* assistant state's attorney, for the appellant (state).

*Anthony C. Polvino,* for the appellee (defendant).

HEIMAN, J. The state, with the permission of the trial court,[1] appeals from the trial court's granting of its motion to dismiss, filed by the state after the trial court granted the defendant's motion to suppress the results of a blood alcohol test. In his motion to suppress, the defendant claimed that the test was taken as a result of an arrest not supported by probable cause. The trial court agreed and granted the defendant's motion to suppress. Claiming that it would be severely handicapped in presenting its case without the suppressed evidence, the state moved for a dismissal under *State v. Ross*, 189 Conn. 42, 51, 454 A.2d 266 (1983), and for permission to appeal under General Statutes § 54-96. The trial court granted both motions and this appeal followed.

The state claims that the trial court improperly determined that the arresting officer lacked probable cause to arrest the defendant and, thus, incorrectly granted the motion to suppress. We agree with the state's contention and reverse the judgment of the trial court.

The following facts are necessary to resolve this appeal. On August 10, 1991, at about 1:30 a.m., state police trooper Frank Sawicki was patrolling Route 166 in the town of Old Saybrook. Sawicki, who had been a police officer for about two and one-half years at the time of this arrest, had received specialized training in administering field sobriety tests and had previously investigated approximately 100 cases of operating a vehicle while under the influence of liquor. While travelling southbound on Route 166, he observed a northbound vehicle swerve into the southbound lane of travel, causing two southbound vehicles to take eva-

---

[1] General Statutes § 54-96 provides: "Appeals from the rulings and decisions of the superior court, upon all questions of law arising on the trial of criminal cases, may be taken by the state, with the permission of the presiding judge, to the supreme court or to the appellate court, in the same manner and to the same effect as if made by the accused."

sive action. The vehicle travelled back into the northbound lane. The officer turned his cruiser around and pursued the northbound vehicle, stopping it as it entered the I-95 westbound ramp.

Upon approaching the vehicle, Sawicki asked the defendant, Paul G. Royce, who had been operating the vehicle, to produce his operator's license and the vehicle's registration. The officer noted an odor of alcohol emanating from the vehicle. He also observed that the defendant's eyes were red and glassy, a condition that the officer had previously observed in persons whom he had apprehended for driving while under the influence of liquor. He noticed that the defendant's eyes appeared to be slightly glazed and perceived that the defendant moved very carefully and deliberately as he tried to retrieve his license and registration. The officer previously observed this kind of slow and deliberate behavior in persons under the influence of liquor.

Sawicki asked the defendant if he had been drinking and the defendant responded that he had consumed one beer. He then asked the defendant to exit his vehicle. The officer administered certain field sobriety tests. Officer Sawicki administered a horizontal gaze nystagmus test. He found the presence of an involuntary nystagmus, or jerkiness, in the motion of the defendant's eye as it followed an object, in this case, a small penlight. He requested that the defendant walk along a straight line in a heel-to-toe fashion for nine steps, turn, pivoting on his leading foot, and return to the point of departure. The officer noted that the defendant hesitated in his turning and returning and that the defendant missed heel-to-toe contact on steps two and three. He also saw that the defendant departed from a straight line in that same area. He requested that the defendant stand on one leg. The officer observed the defendant touch his raised foot to the ground on three separate occasions prior to reaching a count of thirty,

as he had been asked. Sawicki also requested that the defendant recite the alphabet which he accomplished without incident.

On the basis of his observations, the officer concluded that he had probable cause to believe that the defendant was under the influence of intoxicating liquor. The officer placed the defendant under arrest for the crime of operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a and for the motor vehicle violation of failure to drive in an established lane in violation of General Statutes § 14-236. Subsequent to this arrest, the defendant was required to give breath samples for the purpose of determining his blood alcohol level. The defendant sought to suppress the results of these tests alleging he was arrested without probable cause.

In the course of the hearing before the trial court, the defendant introduced expert testimony to support his claim that a horizontal gaze nystagmus can be caused by factors other than the ingestion of alcohol. His expert testified that as much as 15 percent of the total population had horizontal gaze nystagmus as a naturally occurring condition. Further, the expert testified that he examined the defendant on that morning and he concluded that the defendant exhibited a slight nystagmus on examination.

At the completion of the hearing, the trial court granted the defendant's motion to suppress. Subsequently, the state filed a motion for articulation with which the trial court orally complied. In its articulation, the trial court set forth the legal standard that it applied to resolving the issue of probable cause. It also responded that it considered the testimony of the defendant's expert in applying the probable cause standard "with regard to trying to determine what weight it should give to the testimony of the trooper." On that

issue, the trial court stated: "Under the circumstances that existed, again mindful of the weather conditions, the fact that the defendant was wearing glasses, and other relevant criteria, as will be reflected in the record, the court was not inclined to give very much credence to the trooper's testimony in that respect. And the court, recognizing that Dr. O'Brien's testimony was 'after the fact' and that the officer's judgment as to whether or not there was probable cause was dependent upon what was known to him at the time, the court nevertheless felt that it was proper and appropriate for the court to take into account Dr. O'Brien's testimony." In response to the state's request for articulation, the trial court conceded that it had considered evidence that showed conditions that existed subsequent to the arrest of the defendant in determining the existence of probable cause.

We agree with the state's contention that the trial court improperly concluded that the officer lacked probable cause for the arrest of the defendant.

We are obligated to review this case under the clearly erroneous standard. *In re Lloyd W.,* 28 Conn. App. 608, 611, 611 A.2d 641 (1992); *State* v. *Gaumond,* 27 Conn. App. 461, 463, 606 A.2d 735 (1992). Thus, we must determine whether the court's factual findings are clearly erroneous and whether its conclusion is legally and logically consistent. *State* v. *Gaumond,* supra; see *State* v. *Whitfield,* 26 Conn. App. 103, 109–10, 599 A.2d 21 (1991).

Probable cause exists when there are "facts and circumstances within the officer's knowledge, and of which he has trustworthy information, sufficient to justify the belief of a reasonable person that an offense has been or is being committed." (Internal quotation marks omitted.) *State* v. *Martin,* 2 Conn. App. 605,

612B, 482 A.2d 70 (1984), cert. denied, 195 Conn. 802, 488 A.2d 457, cert. denied, 472 U.S. 1009, 105 S. Ct. 2706, 86 L. Ed. 2d 721 (1985). "The probable cause test then is an objective one." *State* v. *Copeland,* 205 Conn. 201, 213, 530 A.2d 603 (1987). While probable cause requires more than mere suspicion; *In re Keijam T.,* 221 Conn. 109, 115–16, 602 A.2d 967 (1992); *In re Lloyd W.,* supra; the line between mere suspicion and probable cause is often fine and "that line necessarily must be drawn by an act of judgment formed in the light of the particular situation and with account taken of all the circumstances." (Internal quotation marks omitted.) *State* v. *Marra,* 222 Conn. 506, 513, 610 A.2d 1113 (1992); *In re Keijam T.,* supra, 116. "The process [of determining probable cause] does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." (Internal quotation marks omitted.) *State* v. *Marlin,* supra, 613.

Thus, it was the trial court's responsibility to assess the information that the police officer had, and, on the basis of that information, determine whether that information was sufficient for the police officer to have determined the existence of probable cause. Id. The trial court's role was to determine whether facts and circumstances within the officer's knowledge existed that were sufficient to justify a belief by a reasonable person that an offense has been or is being committed. *State* v. *Marra,* supra; *In re Keijam T.,* supra, 115; *State* v. *Martin,* supra, 612B.

Here, the trial court improperly focused on the validity of one aspect of the field sobriety tests administered by the arresting officer. The trial court heard evidence regarding the fact that the defendant exhibited signs of horizontal gaze nystagmus unrelated to alcohol use. This evidence was available to the court and dealt with the day of the administration of the test by the expert witness. The standard by which the existence of probable cause is measured is the information available to the arresting officer. *State* v. *Martin,* supra. On the basis of the expert's testimony, the trial court found that an alternative explanation existed for the presence of the nystagmus, eliminated that test from the equation and found that the balance of the information that the officer had at the time of the arrest was insufficient to support probable cause. We disagree with both the trial court's methodology and its finding.

The issue of the validity of the horizontal gaze nystagmus test, including whether the condition resulted from some congenital defect or from the defendant's ingestion of alcohol, may be relevant when the issue of the defendant's guilt or lack thereof is determined. It is not, however, a proper issue to be used to negate the existence of probable cause when the evidence is examined from the viewpoint of the knowledge of the arresting officer. See id. A determination of the existence of probable cause does not and cannot turn on other evidence that may be produced at some later time in an attempt to explain away the evidence used by the officer for concluding that he had probable cause to arrest the defendant. *In re Keijam T.,* supra, 115–16. The issue depends on whether the police officer acted reasonably in believing, on the basis of the facts then available, that probable cause existed. *State* v. *Martin,* supra. In short, a determination of the existence of probable cause requires that the officer satisfy an objective standard at the time of the arrest. See *State* v. *Copeland,* supra.

As we have already indicated, the trial court improperly disregarded the arresting officer's reliance on the nystagmus test as a part of the information he used in ascertaining the probable cause to arrest. The officer also observed the glassy and red condition of the defendant's eyes, noted an odor of alcohol coming from the vehicle and noticed that the defendant had difficulty with parts of the so-called California field sobriety tests. On the basis of his experience, training and education, the officer determined that a person of reasonable caution would conclude that the defendant was under the influence of liquor. The trial court failed to use the proper standard for the determination of the existence of probable cause. We conclude that the trial court's finding that the arrest was without probable cause is clearly erroneous, and its conclusion is not legally and logically consistent with the facts known to the officer at the time of the arrest.

The judgment is reversed and the case is remanded to the trial court with direction to reinstate the case on the docket of the court and to deny the motion to suppress.

In this opinion the other judges concurred.