STATE OF CONNECTICUT *v.* JUSTINIANO TORRES
(10922)

O'CONNELL, FOTI and LANDAU, Js.

Argued January 11—decision released May 25, 1993

*Gregory T. D'Auria,* special public defender, with whom, on the brief, was *Michael J. Palmieri,* special public defender, for the appellant (defendant).

*Mitchell S. Brody,* assistant state's attorney, with whom, on the brief, were *John T. Redway,* state's attorney, and *Bernadette Conway,* assistant state's attorney, for the appellee (state).

E. Y. O'CONNELL, J. The defendant appeals from the judgment of conviction, following the denial of his motion to suppress evidence and subsequent nolo contendere plea, of the crimes of possession of a controlled substance with intent to sell in violation of General Statutes § 21a-277 (b) and possession of drug paraphernalia in violation of General Statutes § 21a-267 (a).

The defendant argues that the judgment of conviction should be reversed and the case remanded to the trial court with direction to grant his motion to suppress because (1) a dog sniff constitutes a search under both the United States and Connecticut constitutions and there was no articulable suspicion to justify such a search, and (2) there was no probable cause to justify a search under the hood of his automobile. We affirm the judgment of the trial court.

The following facts were found by the trial court at the hearing on the motion to suppress. On August 13, 1990, at approximately 8 p.m., State Trooper David Mitch was informed by his dispatcher that the state police had received an anonymous tip that "Junior Torres" had gone to New York to pick up marijuana and would be returning to 93 Atwood Street in Hartford within the next one to two hours. According to the informant, Torres would be operating a black 1977 Ford Thunderbird with Massachusetts license plates.

Acting on the tip, Mitch proceeded with Yukon Jack, a German shepherd police dog trained to sniff out narcotics, to the Middletown rest area of Interstate 91 to monitor the northbound traffic lanes. At approximately 9:35 p.m., Mitch observed a black Thunderbird with Massachusetts license plates traveling north at seventy miles per hour. Mitch followed the automobile and radioed a request for a registration check. Upon receiving a reply that the license number was not listed on the computer, Mitch directed the operator of the automo-

bile to pull over and asked for his license and registration. The defendant was the operator of the automobile. He did not have a license but identified himself as Justiniano Torres and said that he was from New York en route to 93 Atwood Street in Hartford.

Acting on the corroboration of the details supplied by the informant, Mitch utilized Yukon Jack to conduct an exterior search of the automobile while the defendant and his passenger remained seated in the automobile. Yukon Jack began to circle the automobile and exhibited a positive alert for narcotics at the trunk of the vehicle. Mitch, now accompanied by another trooper and a detective, searched the trunk but found no narcotics. Reasoning that the odor of narcotics had been carried by wind currents to the trunk area from the front of the automobile, they searched the engine compartment, where they discovered a large cellophane envelope containing marijuana hidden under the automobile's battery. Mitch then placed the defendant under arrest.

At trial, the defendant moved to suppress the marijuana on the ground that the warrantless search of the automobile was not supported by probable cause. The court, *O'Keefe, J.,* denied the motion and the defendant pleaded nolo contendere. This appeal followed.

I

The defendant's first claim implicates the constitutionality of the dog sniff.[1] The defendant concedes that

---

[1] This claim has three parts. The defendant argues that (1) under the facts of this case, the dog sniff was a search within the meaning of the fourth amendment to the United States constitution, (2) the dog sniff was a search within the meaning of article first, § 7, of the Connecticut constitution, and (3) there was no reasonable articulable suspicion for the police to conduct the search.

In his reply brief, the defendant argues for the first time that the police unconstitutionally "seized" him and his car. We decline to consider this claim. It is a well established principle that arguments cannot be raised

the constitutional issues he attempts to argue before us were not raised in the trial court. No principle of appellate jurisdiction is more fundamental than the rule that an appellate court shall not be bound to consider a claim unless it was distinctly raised at trial. See Practice Book § 4185.

An exception to this principle was carved out for certain claims of constitutional error in *State* v. *Evans,* 165 Conn. 61, 66–70, 327 A.2d 576 (1976). Because the *Evans* standard of review was inconsistently applied; *State* v. *Golding,* 213 Conn. 233, 240, 567 A.2d 823 (1989); C. Tait, Connecticut Appellate Practice and Procedure § 7.10 (b); the Supreme Court in *Golding* articulated guidelines to promote a more uniform application of the standard. Under *Golding,* a claim of constitutional error not preserved at trial will prevail only if four conditions are met: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." *State* v. *Golding,* supra, 239–40; *State* v. *Pinnock,* 220 Conn. 765, 778, 601 A.2d 521 (1992). The

---

for the first time in a reply brief. *Protter* v. *Brown Thompson & Co.,* 25 Conn. App. 360, 363–64 n.2, 593 A.2d 524 (1991); *L. F. Pace & Sons, Inc.* v. *Traveler's Indemnity Co.,* 9 Conn. App. 30, 45 n.8, 514 A.2d 766, cert. denied, 201 Conn. 811, 516 A.2d 866 (1986). "Claims of error by an appellant must be raised in his original brief . . . so that the issue as framed by him can be fully responded to by the appellee in its brief, and so that we can have the full benefit of that written argument. Although the function of the appellant's reply brief is to respond to the arguments and authority presented in the appellee's brief, that function does not include raising an entirely new claim of error." (Citation omitted; internal quotation marks omitted.) *Commissioner* v. *Youth Challenge of Greater Hartford, Inc.,* 219 Conn. 657, 659 n.2, 594 A.2d 958 (1991).

defendant's claim will fail if any one of these conditions is not met. *State* v. *Leary,* 217 Conn. 404, 416, 587 A.2d 85 (1991).

The present case fails to satisfy the first prong of the *Golding* test. The appellant has the responsibility of providing an adequate record for review. *State* v. *Leary,* supra. This is no less true where the claims are of constitutional magnitude. In *State* v. *Evans,* supra, the court, in articulating the standard of review for unpreserved constitutional claims, declined to review one of the defendant's constitutional claims because it was not adequately supported by the record. Id., 70–71. The court explained that an unpreserved claim not involving a constitutional right that has arisen after the trial is reviewable only if the record "adequately supports" the claim. Id., 70. Subsequently, our Supreme Court explained that the term "adequately supports," as used by the *Evans* court, is synonymous with "adequate to review." *State* v. *Golding,* supra, 239 n.9.

This prong of the *Golding* test has been employed frequently by both our Supreme Court and this court. See, e.g., *State* v. *Cerilli,* 222 Conn. 556, 581–82, 610 A.2d 1130 (1992) (portion of claim that police failed to produce crucial evidence); *State* v. *Smith,* 219 Conn. 160, 163–64, 592 A.2d 382 (1991) (claimed denial of rights to due process, compulsory process and confrontation); *State* v. *Santiago,* 218 Conn. 483, 485, 590 A.2d 434 (1991) (challenge to the constitutionality of General Statutes § 53a-167b as applied); *State* v. *Leary,* supra, 415–17 (claim that General Statutes § 42-110b is unconstitutionally vague); *State* v. *Moye,* 214 Conn. 89, 97–99, 570 A.2d 209 (1990) (claimed violation of the confrontation clause); *State* v. *Carpenter,* 214 Conn. 77, 86–87, 570 A.2d 203 (1990), cert. denied, U.S. , 112 S. Ct. 877, 116 L. Ed. 2d 781 (1992) (claimed violation of the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Con-

necticut constitution); *State* v. *Ephraim,* 28 Conn. App. 306, 310, 610 A.2d 1320, cert. denied, 223 Conn. 925, 614 A.2d 828 (1992) (claim that prosecution was barred by the first amendment to the United States constitution); *State* v. *Irving,* 27 Conn. App. 279, 283–84, 606 A.2d 17, cert. denied, 222 Conn. 907, 608 A.2d 694 (1992) (*Miranda* challenge); *State* v. *Ober,* 24 Conn. App. 347, 353–54, 588 A.2d 1080, cert. denied, 219 Conn. 909, 593 A.2d 134, cert. denied, U.S. , 112 S. Ct. 319, 116 L. Ed. 2d 26 (1991) (validity of *Terry* stop); *State* v. *Suarez,* 23 Conn. App. 705, 707–708, 584 A.2d 1194 (1991) (claimed violation of privilege against self-incrimination); *State* v. *Jones,* 22 Conn. App. 303, 308–10, 577 A.2d 293 (1990) (claimed denial of due process); *State* v. *Aleksiewicz,* 20 Conn. App. 643, 653, 569 A.2d 567 (1990) (challenge to jury instruction).

Our Supreme Court recently explored the application of this prong in *State* v. *Stanley,* 223 Conn. 674, 688–90, 613 A.2d 788 (1992). The defendant in *Stanley* claimed that, under the state constitution, the state must prove a *Miranda* waiver beyond a reasonable doubt, as contrasted with the preponderance of the evidence standard required by the federal constitution. The record was deemed inadequate because the defendant never asked the trial court to determine whether the state had proven the waiver beyond a reasonable doubt. Therefore, our Supreme Court could not determine whether the outcome of the case would have been different. The court enunciated that "[s]ince such a determination is a question of fact, even if we were to agree with the defendant, we would have to remand the case to the trial court for that factual determination, rather than to grant the defendant a new trial. Since, under the test in *Golding,* we must determine whether the defendant can *prevail* on his claim, a remand to the trial court would be inappropriate. The

first prong of *Golding* was designed to avoid remands for the purpose of supplementing the record." (Emphasis in original.) Id., 689–90.

Similarly, here, to determine the constitutionality of the dog sniff, the trial court would have had to make factual findings. During argument on the motion to suppress, the defendant conceded that he was not contesting the validity of the stop. Consequently, the trial court's memorandum of decision explicitly stated that "[t]he legality of the initial stop and the sniffing of the car by the dog are not issues." The sole issue before the trial court was whether probable cause existed to search the automobile trunk and engine compartment. The defendant, therefore, never asked the trial court to make the determination that he is asking us to make: whether the dog sniff was a fourth amendment search and, if so, whether the search was supported by articulable or some other appropriate degree of suspicion. Consequently, there was no reason for the trial court to make factual findings on these issues.

When the facts in the record are "insufficient, unclear or ambiguous as to whether a constitutional violation has occurred, we will not attempt to supplement or reconstruct the record, or to make factual determinations, in order to decide the defendant's claim." (Internal quotation marks omitted.) *State* v. *Moye,* supra, 98. In the present case, because we do not know what facts the trial court would have found had the claim been raised, we cannot determine whether the outcome of the case would have been different at the trial level. Accordingly, we do not review the defendant's first claim.

## II

The defendant next claims, as he did before the trial court, that the police lacked probable cause to search the automobile's engine compartment and remove its

battery.[2] Pursuant to the "automobile exception," a warrantless search of an automobile will pass muster under the fourteenth amendment to the United States constitution[3] if there is probable cause to believe that the automobile contains either evidence of a crime; *State* v. *Calovine,* 23 Conn. App. 123, 126–27, 579 A.2d 126 (1990); or contraband; *State* v. *Quinones,* 21 Conn. App. 506, 510, 574 A.2d 1308, cert. denied, 215 Conn. 816, 576 A.2d 546 (1990); *and* there is probable cause to believe that the items will be found in the place searched. *State* v. *Badgett,* 200 Conn. 412, 429, 512 A.2d 160, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986). There must be a "fair probability" that the search will yield the item sought. *State* v. *Rodriguez,* 27 Conn. App. 307, 313–14, 606 A.2d 22 (1992). We review the trial court's finding of probable cause under the clearly erroneous standard, wherein we defer to the trial court's factual findings unless they are clearly erroneous and defer to the trial court's legal conclusion unless it is not legally and logically consistent with the factual findings. *State* v. *Royce,* 29 Conn. App. 512, 516, 616 A.2d 284 (1992).

The trial court based its conclusion that probable cause existed on the circumstances surrounding Yukon Jack's positive alert for narcotics coupled with the corroboration of the details supplied by the informant.[4]

[2] The defendant's reply brief states this claim differently than it is stated in the brief. The brief challenges the search under the hood of the automobile and the removal of the automobile's battery, while the reply brief challenges only the removal of the battery. Notwithstanding this difference we address the entire claim as originally stated in the brief.

[3] The defendant does not argue that the search of the automobile violated article first, § 7, of the Connecticut constitution. See *State* v. *Miller,* 29 Conn. App. 207, 614 A.2d 1229, cert. granted, 224 Conn. 914, 915, 617 A.2d 170 (1992).

[4] The trial court's findings on these points may create the impression that the trial court made the necessary findings to furnish a record for reviewing the constitutional issues addressed in part I. This is not the case. The trial court made such findings about the dog sniff as were necessary for its determination of the probable cause issue. These are not necessarily

The trial court found that Yukon Jack had exhibited a high degree of accuracy in detecting narcotics in training sessions and that he and Mitch had undergone extensive training together. The court further found that Mitch had been the dog's handler for five years and that both were certified in general patrol work and narcotics detection. Moreover, the court found that "[i]t is common knowledge among dog handlers . . . that drugs or narcotics placed further up in the vehicle would emit odors that, via wind currents, would be carried to the rear of the vehicle as the car traveled down the highway." The court concluded that the totality of all of these factors was sufficient to provide probable cause to search the entire automobile including its engine compartment and under its battery. See *United States* v. *Ross,* 456 U.S. 798, 821, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982) (where police have probable cause to believe that contraband is concealed somewhere in the automobile, they may thoroughly search the automobile and every part of it that might contain the object of the search); *Carroll* v. *United States,* 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925) (probable cause existed for police to tear open the seat covers of the defendants' automobile in search of bootleg liquor).

It is well recognized that a dog's positive alert for narcotics may be sufficient to constitute probable cause, or at least an important component thereof, where there is a showing that the dog is reliable in detecting the particular narcotics at issue. See W. LaFave, Search and Seizure (2d Ed.) § 2.2 (f); see also *United States* v. *Hernandez,* 937 F.2d 1490 (9th Cir. 1991); *United States* v. *Trayer,* 898 F.2d 805 (D.C. Cir.), cert. denied, 498 U.S. 839, 111 S. Ct. 113, 112 L. Ed. 2d 83

the same findings the court would have made if it were considering the constitutional issues. We do not know what additional factual findings the court would have made or what questions the court might have asked in making its findings and drawing its conclusions on the constitutional issues.

(1990); *United States* v. *Dovali-Avila,* 895 F.2d 206 (5th Cir. 1990); *United States* v. *Massac,* 867 F.2d 174 (3d Cir. 1989); *United States* v. *Stone,* 866 F.2d 359 (10th Cir. 1989); *United States* v. *Meyer,* 536 F.2d 963 (1st Cir. 1976).

In the present case, the trial court's conclusion that probable cause existed to search the entire automobile was grounded not only on the dog sniff, which the court found to be reliable, but also on its finding that several details of the informant's tip had been corroborated. We conclude that, in light of those findings, the court properly determined that probable cause existed.

The judgment is affirmed.

In this opinion the other judges concurred.