STATE OF CONNECTICUT *v.* WALTER PIEROG
(11402)

LAVERY, LANDAU and HEIMAN, Js.

Submitted on briefs November 1—decision released November 23, 1993[1]

*Stephen F. Cashman* filed a brief for the appellant (defendant).

*Patricia Swords,* state's attorney, and *James M. Ralls* and *Matthew Gedansky,* assistant state's attorneys, filed a brief for the appellee (state).

HEIMAN, J. The defendant appeals from the judgment of conviction, after a plea of nolo contendere made pursuant to General Statutes § 54-94a[2] to a charge of oper-

---

[1] This case was orally argued on June 7, 1993. At the time of oral argument the panel, on its own motion, ordered the trial court to articulate its decision by complying with Practice Book § 4059. The trial court complied with the order of this court and the case was submitted without additional oral argument on November 1, 1993.

[2] General Statutes § 54-94a provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure, motion to suppress statements and evidence based on the involuntariness of a statement or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A

ating a motor vehicle while under the influence of intoxicating liquor or drugs in violation of General Statutes § 14-227a (a) (1).[3] The defendant had filed and argued a motion to dismiss claiming that the police lacked probable cause to support his arrest and thus violated his rights as guaranteed under both the state and federal constitutions. The trial court denied the motion to dismiss and the defendant elected to enter a plea of nolo contendere, reserving his right to appeal from the denial of the motion. This appeal followed.

The trial court afforded the defendant an evidentiary hearing on the issue of the existence of a reasonable and articulable suspicion to support the *Terry* stop and on the issue of probable cause to support the arrest of the defendant.

The following facts were disclosed at the hearing. On December 24, 1991, Trooper Matthew Barnwell III, a Connecticut state trooper, was on patrol in an area encompassing the towns of Bolton, Dover and Hebron. At about 9:53 p.m., Barnwell received a dispatch that reported the possibility of a vehicle being operated erratically on Route 6 traveling in an easterly direction. Barnwell, who was on Route 66 in the town of Hebron, proceeded to the intersection of Route 66 and Route 6.

---

plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

[3] General Statutes § 14-227a provides in pertinent part: "(a) No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. A person commits the offense of operating a motor vehicle while under the influence of intoxicating liquor or any drug or both if he operates a motor vehicle on a public highway of this state or any road of a district organized under the provisions of chapter 105, a purpose of which is the construction and maintenance of roads and sidewalks, or on any private road on which a speed limit has been established in accordance with the provisions of section 14- 218a, or in any parking area for ten or more cars or on any school property (1) while under the influence of intoxicating liquor or any drug or both . . . ."

After he had arrived at the intersection of Routes 6 and 66, Barnwell received a further dispatch that the vehicle had turned right onto Route 316. The dispatch also indicated that the vehicle was a tan van bearing registration number 309BDG. The dispatch provided no information as to the description of the van driver.

Barnwell returned to Route 66 and proceeded to Route 316 where he waited to stop the vehicle. The van did not pass the area where Barnwell waited.

The dispatcher then advised Barnwell that the source of the information concerning the van was telephone calls from citizens who had described the van and its erratic operation. The dispatcher also disclosed to Barnwell the name of the owner of the vehicle and the owner's address, number 198 Route 316. The dispatcher, however, neither disclosed the names of the callers nor transmitted any other information as to the nature of the calls.

Barnwell proceeded to the owner's address, which was between one and two miles from his location. Approximately twenty-five to thirty minutes elapsed from the time of the first report on the vehicle to Barnwell's arrival at the owner's address. He arrived five to ten minutes after the last dispatch concerning the vehicle.

Upon arriving at the address, Barnwell observed a tan van in the private driveway of a house. The vehicle was parked parallel to the road even though the driveway was perpendicular to the road. The vehicle's engine was running and its headlights were lit. An individual, later identified as the defendant, was slumped in the driver's seat with his head back and his mouth open. His speech was slurred and his breath had a strong odor of alcohol. At that point, Barnwell concluded that he had a reasonable and articulable suspicion that mandated a further investigation. After

further investigation, Barnwell placed the defendant under arrest and transported him to the state police barracks.

I

The defendant first asserts in his brief that Barnwell lacked a reasonable and articulable suspicion to make an investigatory stop of the defendant's vehicle. We do not agree.

"[T]he principles of fundamental fairness that are the hallmark of due process permit a brief investigatory detention, even in the absence of probable cause, if the police have a reasonable and articulable suspicion that a person has committed or is about to commit a crime." *State* v. *Lamme,* 216 Conn. 172, 184, 579 A.2d 484 (1990); *State* v. *Harrison,* 30 Conn. App. 108, 111, 618 A.2d 1381, cert. granted on other grounds, 225 Conn. 921, 625 A.2d 824 (1993); see *Terry* v. *Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). In determining the constitutional validity of an investigatory stop, both the United States Supreme Court and our Supreme Court require a balancing of the nature of the intrusion on personal security against the importance of the government interest inducing that intrusion. *United States* v. *Hensley,* 469 U.S. 221, 228, 105 S. Ct. 675, 83 L. Ed. 2d 604 (1985); *State* v. *Mitchell,* 204 Conn. 187, 196–97, 527 A.2d 1168, cert. denied, 484 U.S. 927, 108 S. Ct. 293, 98 L. Ed. 2d 252 (1987); *State* v. *Harrison,* supra, 111–12. Our Supreme Court has also recognized the pervasive societal interest in the apprehension and punishment of drunken drivers and has found that "[b]alancing the circumscribed nature of a *Terry* stop intrusion against the serious risks of criminal behavior, especially in the context of the risks associated with driving while under the influence of intoxicating liquor, we are persuaded that [a] brief detention [does] not violate [a defendant's] due process

rights." *State* v. *Lamme,* supra. In justifying the intrusion, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry* v. *Ohio,* supra, 21; *State* v. *Cofield,* 220 Conn. 38, 45, 595 A.2d 1349 (1991); *State* v. *Harrison,* supra, 112; *State* v. *Whitfield,* 26 Conn. App. 103, 110, 599 A.2d 21 (1991). In evaluating the validity of such a stop, courts consider whether, in light of " 'the totality of the circumstances,' the detaining officers had 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.' *United States* v. *Cortez,* 449 U.S. 411, 417–18, 101 S. Ct. 690, 66 L. Ed. 2d 621 (1981) . . . ." *State* v. *Mitchell,* supra, 195; *State* v. *Cofield,* supra. Review of a trial court's determination of whether a reasonable and articulable suspicion exists "involves a two-part analysis: (1) whether the underlying factual findings of the trial court are clearly erroneous; and (2) whether the conclusion that those facts gave rise to such a suspicion is legally correct." *State* v. *Kyles,* 221 Conn. 643, 660, 607 A.2d 355 (1992). "The trial court's conclusions must stand unless they are legally and logically inconsistent with the facts." (Internal quotation marks omitted.) Id.; *State* v. *Cofield,* supra, 44; *State* v. *Harrison,* supra, 113.

Prior to Barnwell's observation of the vehicle in the driveway of the defendant's house, he had received three separate radio transmissions from the police dispatcher advising him as to the erratic operation of a tan van, its course of travel, description, the registration number, and, finally, the owner's address. The information that he received from the dispatcher had been garnered from telephone complaints by citizens and that source was given to Barnwell.

At the time that Barnwell approached the van, it was already stopped. The trooper took no action that caused the vehicle to stop. He found the van at the address

that had been given to him by the dispatcher as the home of the owner of the vehicle; he observed that it was parked in an odd position in the driveway with the motor running, the headlights on and the defendant slumped in the driver's seat with his head back and his eyes half-closed. Barnwell asked the defendant whether he was all right and received a grunt in response. He noticed a strong odor of alcohol on the breath of the defendant. When the defendant spoke, Barnwell noticed that his speech was slurred. It was then that Barnwell requested that the defendant exit the vehicle.

We conclude, that under the totality of the circumstances, the trooper had a reasonable and articulable suspicion, on an objective basis, that the defendant may have been operating a motor vehicle while under the influence of liquor or drugs or both. See *State* v. *Harrison,* supra. The facts of this case clearly support the trial court's determination that the trooper had such a reasonable and articulable suspicion when he approached the defendant, creating the right to a brief investigatory intrusion. The trial court's determination is not clearly erroneous. " 'The facts [previously detailed] justified the defendant's detention for the limited intrusion of field sobriety testing to confirm or dispel the officer's suspicion.' " *State* v. *Harrison,* supra, 113, quoting *State* v. *Gruver,* 27 Conn. App. 370, 376, 606 A.2d 39 (1992). We conclude that this was a valid *Terry* stop.

The defendant's claim that the trooper lacked a reasonable and articulable suspicion is without merit.

## II

The defendant next asserts that even if Barnwell had a reasonable and articulable suspicion for the *Terry* stop, he nonetheless lacked probable cause for the arrest of the defendant. We are unpersuaded.

The defendant posits that there was insufficient evidence for the trooper to have had probable cause to believe that the defendant had operated his van on the highway in violation of General Statutes § 14-227a.

We have set forth the facts that supported the trial court's upholding of the *Terry* type intrusion on the basis of the trooper's reasonable and articulable suspicion. We now examine the additional facts that the trial court found were sufficient to give rise to probable cause.

After making his initial observations, Barnwell requested that the defendant shut off the motor and exit the van. As the defendant complied, the trooper noted that his eyes were bloodshot. He continued to be aware of a strong odor of alcohol. When the defendant exited the van and attempted to put his foot down, he dropped toward the ground and Barnwell caught him to keep him from falling. He was unable to stand and required the support of Barnwell and a local constable who was on the scene. When the trooper asked the defendant whether he could stand by himself and if he was "okay," the defendant was unresponsive. Barnwell noted that the defendant had urinated on himself. Because of the condition of the defendant, his inability to stand and uncommunicative state, Barnwell determined that he would be unable to perform field sobriety tests and that to attempt to administer such tests was both unsafe and unnecessary. On the basis of this information, Barnwell arrested the defendant for driving under the influence of intoxicating liquor or drugs or both in violation of General Statutes § 14-227a.

We are obligated to review this case under the clearly erroneous standard. *State* v. *Torres,* 31 Conn. App. 443, 450, 625 A.2d 239 (1993); *State* v. *Royce,* 29 Conn. App. 512, 516, 616 A.2d 284 (1992). Thus, we must deter-

mine whether the trial court's factual findings are clearly erroneous and whether its conclusion is legally and logically consistent. *State* v. *Torres,* supra; *State* v. *Royce,* supra.

Probable cause exists when there are "facts and circumstances within the officer's knowledge, and of which he has trustworthy information, sufficient to justify the belief of a reasonable person that an offense has been or is being committed." (Internal quotation marks omitted.) *State* v. *Royce,* supra, quoting *State* v. *Martin,* 2 Conn. App. 605, 612B, 482 A.2d 70 (1984), cert. denied, 195 Conn. 802, 488 A.2d 457, cert. denied, 472 U.S. 1009, 105 S. Ct. 2706, 86 L. Ed. 2d 721 (1985). "The probable cause test then is an objective one." *State* v. *Copeland,* 205 Conn. 201, 213, 530 A.2d 603 (1987); *State* v. *Royce,* supra, 517. "While probable cause requires more than mere suspicion . . . the line between mere suspicion and probable cause is often fine and that line necessarily must be drawn by an act of judgment formed in the light of the particular situation and with account taken of all the circumstances." (Citations omitted; internal quotation marks omitted.) *State* v. *Royce,* supra, 517, quoting in part, *State* v. *Marra,* 222 Conn. 506, 513, 610 A.2d 113 (1992). "The process [of determining probable cause] does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." (Internal quotation marks omitted.) *State* v. *Royce,* supra; *State* v. *Martin,* supra, 613.

We also note that the issue of the existence of probable cause does not turn on whether the defendant could have been convicted on the same available evidence. Probable cause deals with probabilities, not hard certainties. *State* v. *Royce,* supra, 518.

Thus, it was the responsibility of the trial court to assess the information in the hands of the state trooper, and, on the basis of that information, to determine whether the information was sufficient for the trooper to have determined the existence of probable cause. *State* v. *Royce,* supra, 517. It was the role of the trial court to determine whether the facts and circumstances within the trooper's knowledge were sufficient to justify a belief by a reasonable person that an offense has been or is being committed. *State* v. *Marra,* supra; *State* v. *Royce,* supra.

On the basis of his experience, training and education, the trooper determined that a person of reasonable caution would conclude that the defendant had been operating a motor vehicle while under the influence of intoxicating liquor or drugs or both. This determination was, as found by the trial court, legally and logically consistent with the facts known to the trooper at the time of the arrest. See *State* v. *Royce,* supra, 516.

The judgment is affirmed.

In this opinion the other judges concurred.