[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] NOTICE OF FILING OF JUDICIAL DECISION
Pursuant to P.B § 64-1, the court (Dyer, J.), hereby gives notice of the filing of the attached Memorandum of Decision regarding Defendant's Motion to Suppress.
Clerk CT Page 2985
 MEMORANDUM OF DECISION
The Defendant, Robert H. Ball, was arrested on June 27, 1999 and charged with driving under the influence of liquor or drugs in violation of C.G.S. 14-227a.
The Defendant has filed a motion to suppress all evidence seized or discovered as a result of his stop, detention and arrest. He claims that the State Police lacked reasonable and articuable suspicion to detain him. The Defendant maintains that the seizure of his person on June 27thviolates his rights under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution and under Article One, Sections7 and 8 of the Connecticut Constitution.[1]
 FACTUAL FINDINGS
The court has carefully considered all of the evidence and testimony introduced at the hearing on this motion and makes the following findings of fact:
On June 27, 1999, Trooper Jonathan Holston of the Connecticut State Police was on duty as the "desk trooper" at the Troop E barracks in Montville. In that capacity, Trooper Holston answered all telephone calls for emergency assistance and directed the dispatch of responding State Police personnel.
At approximately 5:30 p. m., Trooper Holston started receiving numerous 911 telephone calls to the State Police about a red Isuzu motor vehicle being operated on Route 95 South. Trooper Holston estimated that he received between 10 and 20 calls about this vehicle over a short period of time. He believed that most of the calls originated from cell phones, and were presumably from other motorists traveling on Route 95. The unidentified callers complained that the red Isuzu was being operated erratically, and was weaving in and out of traffic. Trooper Holston also received a report that the Isuzu, which contained a white male operator and a white male passenger, had possibly collided with another vehicle.[2] The complainants described the color and model of the vehicle, and reported that its marker plate read 146-JSY. Trooper Holston checked motor vehicle records and learned that the plate number reported was assigned to a red CT Page 2986 Isuzu.
Trooper Holston radioed Trooper Sean Velazquez, who was on patrol in his cruiser on Route 95 South and passing over the Gold Star Memorial Bridge. Trooper Holston relayed the information which he received about the Isuzu's erratic operation. He also provided the suspected vehicle's description, marker plate number and direction of travel to Trooper Velazquez.
Trooper Velazquez proceeded in a southerly direction through heavy beach traffic on Route 95. Near Exit 73, he observed a red Isuzu which contained two white male occupants and had plate number 146-JSY. As his cruiser neared the suspect vehicle, Trooper Velazquez saw other motorists pointing at the red Isuzu. The trooper pulled behind the Isuzu and signaled for it to stop with his siren and emergency flashing lights. The operator complied and pulled over at a location immediately south of Exit 73 on Route 95. Trooper Velazquez approached and spoke with the Defendant, who was in the operator's seat. The Defendant produced his operator's license, and told Trooper Velazquez that he had consumed three or four beers.
Trooper Velazquez did not observe the Defendant operate erratically, or commit any motor vehicle violations. He testified that he did not follow the Defendant's vehicle for an appreciable distance, because he was concerned about the heavy volume of traffic, and the reports that the Defendant had been operating erratically and had possibly struck another vehicle. For these reasons, he believed that it was safer to stop the Defendant immediately.
As the result of Trooper Velazquez' investigation, the Defendant was arrested for violating C.G.S. 14-227a. The Defendant seeks to suppress the evidence obtained during his stop and detention through the motion which is before the court.
The court carefully observed the testimony and demeanor of Trooper Holston and Trooper Velazquez at the motion hearing, and found both officers to be credible.
 DISCUSSION
"The stop of a motor vehicle and detention of its occupants constitutes a seizure within the meaning of the fourth andfourteenth amendments to the United States constitution." CT Page 2987 (Internal citations omitted). State v. Anderson,24 Conn. App. 438, 441 (1991). See also: State v. Hill, 237 Conn. 81, 87,675 A.2d 866 (1996) and State v. Donahue, 251 Conn. 636, 643 (1999).
Brief investigatory seizures and detentions of motorists are permitted by our state and federal constitutions when the police ". . . . have a reasonable and articuable suspicion that the occupants of a vehicle have engaged, are engaged or are about to engage in criminal activity." (Internal citations omitted). Statev. Anderson, supra, p. 441; State v. Pierog, 33 Conn. App. 107,111 (1993).
Whether or not a stop is constitutionally valid depends upon all of the facts known to the police officers when they detain a motor vehicle. "In determining whether the detention was justified in a given case, a court must consider if [b]ased upon the whole picture the detaining officers [had] a particularized and objective basis for suspecting the particular person stopped of criminal activity. . . . A court reviewing the legality of a stop must therefore examine the specific information available to the police officer at the time of the initial intrusion and any rational inferences to be derived therefrom. . . ." (Internal quotation marks and internal citations omitted). State v.Donahue, supra, p. 644.
In the present case, Trooper Velazquez did not witness erratic operation or motor vehicle violations by the Defendant. He stopped the Defendant's vehicle based upon the information which he received in the radio messages from Trooper Holston. Those transmissions were predicated on the telephone complaints about the alleged erratic operation which the State Police received from 10-20 unidentified callers.
When law enforcement officials sufficiently corroborate the details of an anonymous informant's tip, the information imparted can create reasonable articuable suspicion. Alabama v. White,496 U.S. 325, 330-331, 110 S.Ct. 2413, 110 L.Ed.2d 301 (1990); Statev. Anderson, supra, p. 443. The litmus test to be applied by the court in such cases is whether or not the tip ". . . . bears sufficient indicia of reliability to support the stop by the police." State v. Anderson, supra, p. 445.
In State v Pierog, supra, our Appellate Court upheld the validity of an arrest for driving under the influence which was based on telephone complaints to the State Police from several CT Page 2988 unidentified callers. The arresting officer received three radio message concerning the vehicle's erratic operation, description and direction of travel. He did not observe the vehicle being operated, but located it in the driveway of a private home which was owned by the vehicle's registered owner. The operator was observed slumped behind the wheel of the running motor vehicle, and appeared intoxicated. The Appellate Court in Pierog found, based upon the totality of the circumstances, that the trooper had a reasonable and articuable suspicion that the Defendant had been operating under the influence of liquor and drugs.
The facts here are similar. Trooper Holston received numerous emergency telephone calls over a short span of time from unidentified citizens who described the color, marker plate number, and direction of travel of a red Isuzu motor vehicle being driven erratically on Route 95 South. The court finds that the volume of the 911 calls lent credence to both the facts related, and the urgency of the situation being described. The complainants also provided Trooper Holston with the approximate location of the suspect vehicle, and a general description of its occupants. Trooper Velazquez subsequently located the Defendant's red Isuzu traveling southbound in that area of Route 95. His own observations of the motor vehicle and its occupants confirmed much of the information which he had received over the radio. (As previously noted, Trooper Velazquez did not observe erratic operation, and he found that the Isuzu had not been involved in an accident). When Trooper Velazquez located the Defendant's vehicle, he saw nearby motorists pointing at it.
Based on the totality of the circumstances in this case, the court finds that all of the facts known to Trooper Velazquez, and the inferences which he could reasonably derive from them, created reasonable and articuable suspicion that the Defendant had been, or was, committing a crime. This justified his decision to stop and detain the defendant for further investigation. In making this determination, the court has balanced the nature of the intrusion suffered by the Defendant, against the importance of the governmental interest which prompted the intrusion. Statev. Pierog, supra, p. 111. The court finds that the public safety interests in this case clearly outweigh the harm caused to the Defendant by the investigatory stop. Based upon the allegations and information received by the State Police on June 27, 1999, the court finds that the trooper's actions were necessary to investigate alleged dangerous criminal activity, and to prevent possible loss of life or injury on a crowded highway. See: StateCT Page 2989v. Pierog, supra, p. 111-112, and State v. Donahue, supra, p. 653.
Because the Defendant's seizure was based on reasonable and articuable suspicion, it did not violate his rights under our state and federal constitutions. Accordingly, the motion to suppress is hereby DENIED.
Dated at New London, Connecticut this 13th day of March, 2000.
BY THE COURT:
Dyer, J.