[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The defendant, ANGELO GOMEZ, was arrested on May 23, 2000 in New London, CT and charged with narcotics violations and operating while under suspension in violation of C.G.S. § 14-215. A substitute information was filed on November 28, 2000 charging the defendant with possession with intent to sell cocaine in violation of C.G.S. §21a-278(a) and possession with intent to sell cocaine within 1500 feet of a school in violation of C.G.S. § 21a-278a(b). On November 28, 2000, the defendant filed a Motion to Suppress all evidence seized and statements made at the time of his arrest. The defendant claims that the police had no articulable facts upon which to base a reasonable suspicion to stop the car until after the defendant's car was stopped. The defendant claims that the police officers did not have sufficient information to justify the stop and the stop was based upon a "hunch or a guess." After the hearing, defense counsel raised the additional claim that the Groton Town police officers, who were in the vehicle that actually pulled the defendant's car over at the direction of the New London police officers, had no authority to make the stop in the City of New London and did not possess the requisite specific and articulable factual basis to make the stop.
An evidentiary hearing was held in this matter on November 28 and 30, 2000. On December 14, 2000, the judge who presided over that hearing recused himself. The matter was scheduled to resume January 3, 2001 before a different judge. After thorough discussion with defense CT Page 1659 counsel, the defendant agreed on the record to have this Court decide the Motion to Suppress based upon the transcript of the earlier hearing rather than to hold a new suppression hearing. The Court provided counsel for the defendant and the State the opportunity to supplement any earlier filed memoranda or argument. The State filed a Supplemental Response on January 4, 2001. This Court heard supplemental oral argument on January 17, 2001. The Court has thoroughly reviewed the transcripts of the hearing held on November 28 and 30, including the arguments of counsel, and has considered the arguments made in the briefs and in court on January 17, 2001. Based on the facts set forth below and for the reasons set forth below, the Motion to Suppress is denied.
 FINDINGS OF FACT
Six witnesses testified at the hearing on November 28 and 30: New London Police Officers William Pero, Scott Johnson, and Dean Forier, Groton City Police Detective David Bailey, Bruce Kosis, Jr. of the Department of Motor Vehicles and Silva Terdjanian, a chemist with the State of Connecticut Controlled Substances Laboratory. The Court credits the testimony of the officers and finds the following facts:
1. On May 23, 2000, New London Police Officers William Pero and Scott Johnson were assisting Groton City Police Detective David Bailey and Detective Sergeant Keith Turgeon in locating an individual named Ramon Gomez. Ramon Gomez was a suspect in a violent Groton City home invasion that had occurred a few days earlier involving three armed, masked perpetrators. Ramon Gomez resided in the City of New London. New London police officers, who were familiar with Ramon Gomez, agreed to assist Groton City police detectives in locating him. New London Police Officer Pero knew Ramon Gomez through numerous police contacts and knew that Ramon Gomez's license to operate a motor vehicle had been suspended. Officer Pero had issued summonses in the past to Ramon Gomez, and to his brother, Angelo Gomez, for operating while under suspension.
2. In the course of the investigation, the police officers decided to travel to the residence of Ramon Gomez's parents to see if Ramon was there or if they could get any information concerning his whereabouts. New London Police Officers Pero and Johnson were wearing plain clothes and riding in an unmarked police car. The car did not have lights or sirens. Officer Johnson was driving. Groton City Officers Bailey and Turgeon were traveling in an unmarked Groton City police vehicle which did have a siren and police lights in the grill.
3. While traveling to the residence of Ramon Gomez's parents, Officer Pero saw a vehicle pass in front of him and Officer Johnson at the intersection of Williams and Granite Streets in New London. Officer Pero CT Page 1660 believed the driver of the car, who was wearing a hat pulled down low, was Ramon Gomez.
4. Believing the driver of the car to be Ramon Gomez, whose license to operate Pero knew had been suspended, the New London officers contacted the Groton City detectives using a Nextel hand held digital radio to inform them of this and followed the car. As they followed the car, being driven by an individual they believed to be Ramon Gomez, Officer Pero called for a marked New London police cruiser to assist in the stop. There was no marked New London police unit available immediately to assist them. Because the New London police vehicle they were traveling in was completely unmarked, and with no marked cruiser available, Officer Pero requested that the Groton City detectives stop the vehicle since their car was equipped with grill lights and a siren.
5. Groton City Detective Bailey then turned on lights and siren and pulled the vehicle over. New London Officers Pero and Johnson, however, were the officers who first approached the car with their badges visible and without guns drawn. Officer Pero approached the driver's side and Officer Johnson approached the passenger side of the car.
6. As Officer Pero approached the driver whom he believed to be Ramon Gomez, he immediately realized that the driver was in fact Angelo Gomez, also known as "Magoo", Ramon Gomez's brother. He knew Angelo Gomez's license to operate a motor vehicle had been suspended. The brothers, having similar features, resemble one another, with Angelo five or six years older, a little taller and a little stockier than Ramon. The Officers knew, based on past experiences, that Angelo Gomez had been involved in drugs and drug dealing.
7. Officer Pero asked Angelo Gomez if his license was still suspended, to which Angelo Gomez replied, "Yup, you got me." Based on his belief that Angelo Gomez looked nervous, upset, sort of disheveled and glassy eyed, Officer Pero then asked Angelo Gomez to step out of the car. Gomez also told the officer that he had been up for a couple of days and hadn't slept. For his safety, Officer Pero patted down the defendant. During the pat down he felt a hard bulge in the defendant's pants. He felt Angelo "tense up" and because he thought the defendant was going to run or fight, he grabbed him around the waist and instructed him not to fight. The defendant said he wouldn't. The bulge was discovered to consist of 31 rocks of crack cocaine each individually wrapped in clear plastic bags, tie knotted and all placed inside another plastic bag. The Officers also seized a pager, cell phone, a straw made out of a pen and $202 in cash. During the stop, a marked New London police cruiser arrived at the scene and the defendant was placed in the cruiser. CT Page 1661
 DISCUSSION
"[A] person [is defined] as seized under our state constitution when by means of physical force or a show of authority, his freedom of movement is restrained." State v. Donahue, 251 Conn. 636, 642-43 (1999) (Internal citations omitted). Brief investigatory seizures and detentions of motorists are permitted by our state and federal constitutions when the police ". . . have a reasonable and articulable suspicion that the occupants of a vehicle have engaged, are engaged or are about to engage in criminal activity.". State v. Anderson, 24 Conn. App. 438, 441 (1990) (Internal citations omitted); State v. Pierog, 33 Conn. App. 107, 111
(1993).
"Article first, §§ 7 and 9 of our state constitution permit a police officer in appropriate circumstances and in an appropriate manner to detain an individual for investigative purposes even though there is no probable cause to make an arrest. In determining whether the detention was justified in a given case, a court must consider if [b]ased upon the whole picture the detaining officers [had] a particularized and objective basis for suspecting the particular person stopped of criminal activity. . . .A court reviewing the legality of the stop must, therefore, examine the specific information available to the police officer at the time of the initial intrusion and any rational inferences to be derived therefrom." (Internal citations and internal quotation marks omitted.)State v. Donahue, 251 Conn. at 634-44. "Police have the right to stop for investigation short of arrest where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot. . . .[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together, with rational inferences from those facts, reasonably warrant that intrusion." Id. at 645 (citing Statev. Watson, 165 Conn. 577, 584-85 cert. denied, 416 U.S. 960 (1974) (citations omitted; internal quotation marks omitted).
In Donahue, the Connecticut Supreme Court held that a police officer did not have a reasonable and articulable suspicion to detain a motorist after an officer observed the operator and a companion parked in the lot of a closed social club at approximately 1:50 a.m. The Court held that because the operator had not driven erratically, committed a motor vehicle violation, exhibited furtive conduct, or exited the vehicle, the police lacked reasonable and articulable suspicion that the defendant had committed or was about to commit a crime. Id. at 648.
The facts here are substantially different from those in Donahue in that the New London officers were aware that the individual whom they believed they had stopped was operating a motor vehicle while his license CT Page 1662 was suspended. This alone constituted a proper basis on which to stop the motor vehicle. Here, however, the officers also believed they were stopping an individual who was a suspect in an armed home invasion.
The defendant argues that the stop was made by Groton City police officers who did not possess the requisite reasonable and articulable suspicion that the defendant had engaged or was engaging in illegal activity. At the time the Groton City officers used lights and sirens to stop the car, (as directed by New London), they are presumed to share the knowledge of the New London officers who were cooperating with Groton City in the investigation into the home invasion. The principle of collective or imputed law enforcement knowledge clearly applies in the circumstances presented here. State v. Runkles, 174 Conn. 405, 411
(1978); Illinois v. Andreas, 463 U.S. 765, 771 n. 5 (1983) (citing Whitelyv. Warden, 401 U.S. 560, 568 (1971)); United States v. Colon,111 F. Sup.2d 439, 443 (S.D.N.Y. 2000).
The initial stop was justified based on Officer Pero's belief that Ramon Gomez was operating while under suspension and thus, that a crime was being committed. Once he realized Angelo Gomez was driving the car, the officer's further conduct was justified based on his knowledge that Angelo Gomez was also under suspension. When he approached the vehicle and recognized the driver to be Angelo Gomez, Officer Pero asked whether he was still under suspension. The defendant argues that the fact that Officer Pero asked the defendant whether he was still under suspension is evidence that the officer did not know whether the defendant's license was under suspension. To the contrary, asking whether the defendant was still under suspension does not demonstrate a lack of knowledge, but rather knowledge which the officer rightly sought to confirm.
The subsequent pat down was justified based on Officer Pero's observations at the scene including Gomez's appearance, i.e., nervous, upset, sort of disheveled and glassy eyed, and his prior knowledge that Angelo Gomez had been involved in drugs and drug dealing. Further, Gomez had admitted that he was still under suspension and stated that he had been up for several days and hadn't slept. As set forth in State v.Watson, 165 Conn. 577, 585:
 The results of the initial stop may arouse further suspicion or may dispel the questions in the officer's mind. If the latter is the-case, the stop may go no further and the detained individual must be free to go. If, on the contrary, the officer's suspicions are-confirmed or are further aroused, the stop may be prolonged and the scope enlarged as required by the circumstances.
CT Page 1663
Here, the Officer Pero's suspicions became confirmed and further aroused as he observed Angelo Gomez.
The defendant argues that the stop by Groton City police officers was in violation of C.G.S. § 54-1f. This statute authorizes members of local, police departments to pursue an offender outside their respective precincts into any part of the state in order to effect an arrest when they are in immediate pursuit of one who may be arrested without a warrant under the provisions of the statute. This statute is inapplicable here, however, because although Groton City police officers did assist in pulling the car over, they did not arrest the defendant. The New London police officers were the officers who made the decision to stop the car, approached the defendant's car first, and identified themselves as police officers. New London Police Officer Pero made the decision to stop the vehicle, to pat down the defendant and to make the arrest. The arrest was made by a New London police officer acting within his authority. Groton City officers, acting at the direction of New London, simply assisted New London by turning on lights and siren and pulling the vehicle over. This statute does not prohibit Groton City officers from assisting New London during the motor vehicle stop, particularly here when no marked New London cruiser was available.
The specific and articulable facts as set forth above, taken together with the rational inferences derived from those facts, reasonably warranted the intrusion in this case. Terry v. Ohio, 392 U.S. 1 (1968).
In view of all the evidence, the Court finds that the officers had a reasonable and articulable suspicion that justified the stop of the defendant's vehicle in New London, CT on May 23, 2000.
For the foregoing reasons, the motion to suppress is DENIED.
Jongbloed, J.