[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The defendant filed a motion for modification of alimony and life insurance, coded No. 145. The defendant claims that the plaintiff has been and/or continues to live with another person resulting in a change of circumstances of the plaintiff as set forth in Connecticut General Statutes § 46b-86 (b) so as to warrant a modification of alimony and life insurance. The evidence on the defendant's motion, coded No. 145, was completed on October 7, 1996. The defendant's motion is dated June 19, 1995, and file stamped July 24, 1995. A deputy sheriff served the plaintiff with a copy of the defendant's motion on July 17, 1995. The plaintiff filed a motion for contempt, coded No. 144, and file stamped July 26, 1995, alleging that the defendant was in arrears in court ordered alimony payments and attorney's fees. The plaintiff also filed a motion for modification, coded No. 146, dated August 8, 1995, and file stamped August 16, 1995, alleging that the marriage between the parties was dissolved on September 1, 1987, and that subsequently thereto the court ordered alimony was modified by order dated September 13, 1993, and further alleging that there has been a substantial change in the parties' circumstances since September 13, 1993, and seeking an increase in the alimony order.
Many of the facts that give rise to the above motions are not in dispute. The marriage between the parties was dissolved by decree dated September 1, 1987. The parties had been married on October 17, 1964. The decree provided in part that the defendant pay to the plaintiff weekly support in the amount of $575 for the minor child until the minor child attains the age of eighteen, dies, marries or is otherwise emancipated, whichever first occurs, and further provided that so long as the defendant is obligated to pay child support he shall pay to the plaintiff the sum of $1 per year as alimony. The decree further provided that when the defendant's obligation to pay child support ceases, he will pay to the plaintiff, on a weekly basis, the sum of $575 per week as alimony, to continue until the plaintiff dies, the defendant dies, the plaintiff remarries, or the plaintiff regularly cohabits with an unrelated male, pursuant to the statute, or until the plaintiff attains the age of sixty-two, whichever first occurs. The decree further required the defendant to name the plaintiff as beneficiary of a life insurance policy or policies on his life equivalent to the amount of unpaid alimony and child support obligations due to the plaintiff, but in no event more than $100,000. On September 13, 1993, the judgment was modified reducing the defendant's alimony obligation to the plaintiff to $325 per week. CT Page 9857
 I THE DEFENDANT'S CLAIM THAT THE PLAINTIFF IS "LIVING WITH ANOTHER PERSON"
General Statutes § 46b-86 (b) provides as follows:
 In an action for divorce, dissolution of marriage, legal separation or annulment brought by a husband or wife, in which a final judgment has been entered providing for the payment of periodic alimony by one party to the other, the superior court may, in its discretion and upon notice and hearing, modify such judgment and suspend, reduce or terminate the payment of periodic alimony upon a showing that the party receiving the periodic alimony is living with another person under circumstances which the court finds should result in the modification, suspension, reduction or termination of alimony because the living arrangements cause such a change of circumstances as to alter the financial needs of that party. [Emphasis added.]
In order to prove that the plaintiff was cohabitating, as defined by statute, the defendant must prove that (1) the plaintiff was living with another person, and (2) the living arrangement with the other person caused a change of circumstances so as to alter the financial needs of the plaintiff. Section 46b-86 (b) requires only that there be a "change of circumstances," not a "substantial" change as required by § 46b-86 (a). Kaplan v. Kaplan, 185 Conn. 42, 45-46,440 A.2d 252 (1981), on appeal after remand, 186 Conn. 287,441 A.2d 629 (1982).
The court finds the following additional facts regarding this issue.
The plaintiff first met Robert Lee in approximately 1992, at her place of employment at Union Carbide where he was also employed.
Robert Lee has slept overnight at the plaintiff's residence commencing January, 1994. He was at her home between September 13, 1993 and January 1, 1994, looking at damage inside of her home to see if he could do some of the required work. He was at her home approximately ten times during that period of time. He CT Page 9858 did not sleep over at her home between September 13, 1993 and January 1, 1994. Commencing January 1, 1994, he has done renovations at the plaintiff's home. He would stay overnight at her home an average of two to three evenings weekly in 1994 and 1995, when he was doing work at her home. In July, 1995, there was one occasion that he spent three consecutive evenings at her home when the plaintiff had other friends to her home. Gretchen Graham, the parties' adult daughter, resided with the plaintiff from April 10 or April 11, 1994 to June 1, 1994. The defendant claims that during the period of April to June, 1994, when Gretchen Graham lived at the plaintiff's home, Robert Lee stayed there each evening except for two evenings. From the evidence presented, the court finds that claim is not credible. During the period of April 10 or April 11, 1994 to June 1, 1994, when Gretchen Graham, the daughter of the plaintiff and defendant, resided with the plaintiff for a period of seven to eight weeks, Robert Lee did sleep at the plaintiff's residence an average of two to three nights weekly. He was doing renovation work on the plaintiff's home during that period of time. The parties are also in dispute as to whether during the evenings that Robert Lee did stay overnight at the plaintiff's residence between April, 1994 and June, 1994, whether he slept in the plaintiff's bed or whether he slept in the spare bedroom upstairs. From the evidence presented, the court finds that he slept upstairs.
The parties have stipulated that the court could take judicial notice as to whether there is a dissolution action pending in the judicial district of Danbury involving Robert Lee. The court finds that no such action is pending. During the period of January, 1994 to September, 1995, he had his own residence at 12 Freddy Lane, Brookfield, Connecticut where he resided with his wife.
The bedroom that Gretchen Graham occupied during the approximate seven to eight week period she lived with the plaintiff, commencing April, 1994, was directly above the plaintiff's bedroom.
Robert Lee slept in the bedroom that was used by the two sons of the plaintiff and the defendant on the second floor on the south side of the plaintiff's home. The plaintiff's bedroom was on the first floor on the north side of her home. Robert Lee never slept in the plaintiff's bedroom.
The parties are in dispute as to whether during the period of CT Page 9859 April 10 or 11, 1994 to June 1, 1994, the plaintiff and Robert Lee engaged in occasional marital relations. From the evidence presented, the court finds that they did not engage in marital relations during the period of April 10 or 11, 1994 to June 1, 1994.
Robert Lee had dinner at the plaintiff's residence on a number of occasions. During the seven to eight weeks that Gretchen Graham resided with the plaintiff in 1994, Robert Lee had dinner at the plaintiff's residence for up to twice a week. He also kept clothes at the plaintiff's residence. His clothes occupied one shelf in a storage closet. The plaintiff also used the storage closet for some of her items. Robert Lee also stored a 9 foot hammerhead shank at the plaintiff's residence. He also kept toiletries in her home.
The plaintiff has had a strictly platonic relationship with Robert Lee. He is her friend. She has not introduced him to anyone as her boyfriend or referred to him as her boyfriend. She has never referred to him as anything more than a platonic friend. He has been present at her home when she has had other mutual friends at her home. He has not given her any clothing, artwork, jewelry, cash or use of his credit card. On one occasion she had dinner outside of her home with him and with her female friend. She paid for her own meal.
The distance between the plaintiff's residence and Robert Lee's home in Brookfield, Connecticut, was approximately 15 to 20 minutes by automobile. Between January, 1994 and September, 1995, Robert Lee worked an average of two to three days per week at the plaintiff's residence. On the occasions that Robert Lee was doing renovation work at the plaintiff's residence, he would usually work until 10 to 11 p.m. He would normally arrive at the plaintiff's home after he finished work during the time he was employed. After he retired, he would sometimes arrive at her home before she left for work. The plaintiff would normally leave for work at approximately 7 a.m. Robert Lee had access to a spare key to the plaintiff's residence, as did the plaintiff's electrician and a close female friend of the plaintiff. The plaintiff has four close male friends who have also stayed overnight at her home. Between approximately September of 1994 and September of 1995, the plaintiff has entertained friends at her home on three to four occasions. Robert Lee was present on most of those occasions. CT Page 9860
Robert Lee would sometimes have a sandwich at the plaintiff's home. He would bring in his own food and cook it himself. During 1994, there were occasions when he consumed alcohol at the plaintiff's home that was brought in by himself.
Sometime in 1994, the plaintiff and Robert Lee were on the same flight to Florida to visit a mutual friend as part of a vacation trip. Also in 1994, Robert Lee accompanied the plaintiff to visit the plaintiff's parents at her parents' home in Cape Cod. The plaintiff did not travel with Robert Lee during 1995. The plaintiff paid for her own air fare for the trip to Florida with Robert Lee in 1994. The trips to Florida and Cape Cod are the only traveling that the plaintiff did with Robert Lee in 1994.
The plaintiff had periodontic surgery on or about April 25, 1994. After she returned home following the surgery, Robert Lee stayed at her home to care for her for several days. She also had dental surgery on June 6, 1994, August 3, 1994, November 2, 1994, March 22, 1995 and May 3, 1995.
On those occasions, subsequent to the April 25, 1994 surgery, Robert Lee stayed at the plaintiff's residence to care for her on each occasion for several days.
Following all five of the plaintiff's periodontal surgeries, Robert Lee stayed overnight at her home for two evenings. He may have stayed for three consecutive evenings following two of the five periodontal surgeries. One of the three consecutive evenings' stays may have been following the April 25, 1994 surgery when Gretchen Graham was staying with the plaintiff. The plaintiff was on medication following her dental surgery. She would take naps during the day, as well as the evening. He did not spend any time in her bedroom following her dental surgeries when he stayed overnight.
Following all the oral surgeries that the plaintiff underwent, Robert Lee would serve her ice cream, soup and tea. He also obtained her medication and ice packs for her.
Robert Lee retired from his employment in September of 1994, at Union Carbide. He uses the plaintiff's address for his Union Carbide pension information. His Union Carbide mail is addressed to himself. During 1995, he received mail at the plaintiff's residence regarding his pension plan on an average of CT Page 9861 approximately once a month. He has also received two letters addressed to him from the defendant's attorney addressed to the plaintiff's residence. One or two pieces of mail a week were delivered to the plaintiff's residence addressed to Robert Lee for the last three years prior to September 25, 1996. The United States Postal Service letter carrier never received a mail piece back from Robert Lee at 138 Putnam Park Road as refused or otherwise not accepted for delivery. An L.L. Bean Christmas 1995 catalog was delivered to 138 Putnam Park Road, Bethel, Connecticut, addressed to J. Axelrod. J. Axelrod has never lived at 138 Putnam Park Road, Bethel, Connecticut.
In 1995, mail was addressed to Robert Lee at the plaintiff's residence from Union Carbide regarding his retirement. He also received a lot of junk mail. The plaintiff told Robert Lee that she was upset at him receiving his junk mail at her residence. She did not object to his receiving his Union Carbide retirement mail at her residence.
Robert Lee listed his home address as 12 Freddy Lane, Brookfield, Connecticut, on his 1994 State of Connecticut Department of Revenue Service tax return dated April 3, 1995. His 1994 employee withholding allowance certificate Form W-4, dated April 3, 1995, also listed 12 Freddy Lane, Brookfield, Connecticut, as his home address. He was also married on that date. A U.S. Department of Justice Immigration and Naturalization Service form, dated April 5, 1995, signed by Robert Lee, listed his address as 138 Putnam Park Road, Bethel, Connecticut. An undated resume of Robert Lee lists his address as 138 Putnam Park Road, Bethel, Connecticut. An application for employment signed by Robert Lee with Norbert E. Mitchell Company, Inc., dated March 22, 1995, lists his address as 138 Putnam Park Road, Bethel, Connecticut. That application was for employment at a Sunoco station on Route 58, which is on Putnam Park Road, and states that he lives approximately 300 yards from that station. Robert Lee was hired by Norbert E. Mitchell Company, Inc. on April 5, 1995, and worked for that company until June 8, 1995. His 1995 absentee calendar with Norbert E. Mitchell Company, Inc. lists his address as 138 Putnam Park Road, Bethel, Connecticut. His payroll register with Norbert E. Mitchell Company, Inc., with a report date of June 12, 1995, lists his address as 12 Freddy Lane, Brookfield, Connecticut. His personnel ENVELO-FILE with Norbert E. Mitchell Company, Inc. lists his address as 138 Putnam Park Road, Bethel, Connecticut. A computer check of Robert Lee's address lists his address as 12 Freddy Lane, Brookfield, CT Page 9862 Connecticut.
Robert Lee escorted the plaintiff to her youngest son's wedding in 1994.
During 1995, the plaintiff had available the use of her own automobile and the use of Robert Lee's truck. He would leave it at her residence for her to drive. He also had use of her 1987 Topaz. She would drive her Topaz an average of two to three times a week, and drive his truck an average of approximately three times a week. She used his truck in an attempt to extend the period of time that her Topaz would be operable, as her vehicle needed extensive repairs. He also had access to his wife's motor vehicle. She did not pay for gasoline or tires or repairs to his vehicle, except that when his vehicle was low on gas, she would put gasoline in it when she would use it. She also had the use of his truck in 1994.
The defendant retained the William Taylor Investigation Agency in March of 1995. The private investigator work performed by the William Taylor Agency commenced on March 21, 1995.
The plaintiff's residence is set back approximately 225 feet from Putnam Park Road and approximately 90 feet from Steck Road. Steck Road is a private street. The north side of the home faces Steck Road. The front of the home faces Putnam Park Road. Between March, 1995 and August, 1995, William Taylor did three or four surveillances at the plaintiff's residence, as well as numerous drive-bys. He claims to have observed Robert Lee in the plaintiff's bedroom on approximately ten occasions on various evenings that he did surveillances or drive-bys. The court finds that that testimony is not credible. The court finds that the only time that Robert Lee was in the plaintiff's bedroom was when he inspected the plaintiff's home in late 1993, and when he was doing repairs to the bedroom. He never entered her bedroom in the evening on the occasions that he stayed overnight.
From all of the evidence presented, this court finds that between September 13, 1993 and October 7, 1996, the last date that evidence was presented in this matter, the plaintiff was not living with another person.
 II
THE DEFENDANT'S CLAIM THAT THE LIVING CT Page 9863 ARRANGEMENTS OF THE PLAINTIFF WITH ANOTHER PERSON CAUSED A CHANGE OF CIRCUMSTANCES SO AS TO ALTER THE FINANCIAL NEEDS OF THE PLAINTIFF
Robert Lee has done substantial renovation work to the plaintiff's residence.
Most of the work that Robert Lee did was inside of her home.
Robert Lee did clean the patio at the plaintiff's residence outside of her home. The work done at the plaintiff's home by Robert Lee up to August 3, 1995, is itemized on Defendant's Exhibit 17 and consisted of work in the living room, lower hallway, staircase to upper level, kitchen, small dining room, T.V. room, master bedroom, lower bedroom, upper hallway, upper bathroom, upper bedroom #1, upper bedroom #2, large dining room, front room, basement, attic, as well as miscellaneous work.
Since August 3, 1995, Robert Lee has finished the large dining room except for the ceiling. He also started some walls in the front of the home. He did not do any work at the home from approximately September 5, 1995 to September 20, 1995.
The plaintiff did not pay Robert Lee for the work that he did on her residence. He has done similar work for other people. The plaintiff could not have afforded to have the work done if she had to pay for it. The plaintiff paid for all materials that were used in the renovation work done by Robert Lee.
The court finds that the value of all of the labor performed by Robert Lee at the plaintiff's residence between January, 1994 and September, 1995, was approximately $9000. The work that he performed would take approximately 120 to 320 hours to complete. Robert Lee used his own tools for the renovations that he did. The value of the plaintiff's home has increased due to the renovations done by Mr. Lee. Robert Lee also made a gift to the plaintiff of a living room chair and a small couch.
From all of the evidence presented, this court finds that the work that Robert Lee did at the plaintiff's home did alter her financial needs. However, that work was not done as a result of living arrangements of the plaintiff with Robert Lee.
III CT Page 9864
PLAINTIFF'S MOTION FOR MODIFICATION, CODED NO. 146
The court finds that the plaintiff has failed to prove that there has been a substantial change in circumstances between September 13, 1993, the date when the judgment was modified reducing the defendant's alimony obligation to the plaintiff to $325 per week, and the last date of evidence in this case.
 IV
PLAINTIFF'S CONTEMPT MOTION, CODED NO. 144
During various dates when the court was hearing the defendant's motion for modification, coded No. 145, and the plaintiff's motion for modification, coded No. 146, and the plaintiff's motion for contempt, coded No. 144, the defendant was current in his alimony payments on some occasions and was arrears on other occasions. The court is making no finding as to whether the defendant was or was not current in his alimony obligations as of the last date of hearing on this case. Any such claim can be raised by separate motion.
This court has considered the provisions of § 46b-86 (b) regarding the defendant's motion to modify, and has considered the provisions of § 46b-86(a) regarding the plaintiff's motion to modify, and has considered the provisions of § 46b-62
regarding the plaintiff's motion for contempt, and has considered the provisions of § 46b-62, as well as the provisions of § 46b-87 regarding the issue of attorney's fees. The court enters the following orders.
ORDERS
1. The defendant's motion to modify is denied.
2. The plaintiff's motion to modify is denied.
3. The plaintiff's motion for contempt is denied.
4. No attorney's fees are awarded in favor of either party.
Axelrod, J. CT Page 9865